# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3185

_____

| | |
|---|---|
| Hazel Pyland, | * |
| | * |
| Appellant, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the Eastern |
| | *  District of Arkansas |
| Kenneth S. Apfel,[1] Commissioner, | * |
| Social Security Administration, | * |
| | * |
| Appellee. | * |

_____

Submitted:   February 9, 1998

Filed:   July 22, 1998

_____

Before RICHARD S. ARNOLD,[2] Chief Judge, McMILLIAN, Circuit Judge, and
  LIMBAUGH,[3] District Judge.

_____

[1]Kenneth S. Apfel has been appointed to serve as Commissioner of the Social Security Administration and is automatically substituted as appellee.  See Fed. R. App. P. 43(c)(1).

[2]The Honorable Pasco M. Bowman succeeded the Honorable Richard S. Arnold as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.

[3]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

_____

McMILLIAN, Circuit Judge.

Hazel Pyland (Pyland) appeals from a final order entered in the United States District Court[4] for the Eastern District of Arkansas affirming the final decision of the Commissioner of the Social Security Administration (Commissioner). Pyland v. Callahan, No. J-C-95-286 (E.D. Ark. July 9, 1997) (Memorandum and Order) (hereinafter "slip op."). Pyland applied for disability insurance benefits in August 1992, alleging that she became disabled on September 10, 1979, due to mental impairment. The district court found that substantial evidence on the record as a whole supported the decision of the administrative law judge (ALJ) that Pyland was not disabled before the expiration of her insured status on September 30, 1981, and, therefore, was not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. For reversal, Pyland argues that the ALJ erred in concluding that substantial evidence on the record as a whole supported the Commissioner's decision to deny her benefits. For the reasons discussed below, we affirm the order of the district court.

## Jurisdiction

Jurisdiction in the district court was proper based upon 42 U.S.C. § 405(g). Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure.

_____

[4]The Honorable Henry Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas, to whom this case was referred for decision upon the consent of the parties pursuant to 28 U.S.C. § 636(c).

## Background

At the time Pyland's insured status expired on September 30, 1981, she was forty years old. Pyland alleges that she became disabled on September 10, 1979. She has a high school education, several hours of college credit, and past relevant work experience as a secretary. She filed her most recent application for disability insurance benefits on the basis of mental impairment due to depression and seizures on August 31, 1992.

Pyland has had a long history of physical and mental ailments. We discuss only those relevant to her disability claim. In 1973 Pyland was admitted to Community Methodist Hospital and diagnosed with depressive neurosis and suicidal tendencies. In August 1979 she was admitted to Craighead Memorial Hospital for chest pains and shortness of breath. She complained of seizure activity while in the hospital, but neurological examinations showed nothing abnormal. The doctors recommended a psychiatric evaluation.

In September 1979 she was admitted to the hospital twice. On September 10, her last day of work as a secretary and the date on which she claims to have become disabled, she was admitted for a staphylococcus infection. On September 14 she was admitted for a prescription drug overdose. During her second admittance, doctors stabilized her on antidepressants and seizure medication and then released her.

In September 1980 Pyland was admitted twice to St. Bernard's Regional Medical Center (St. Bernard's). On September 14 she was admitted for depression and grand mal seizures. On September 27 she was admitted for dizziness and unsteady gait. After another neurological exam showed nothing abnormal, a psychiatrist determined that her seizures were psychiatrically based and diagnosed her with manic depression. In April 1981 Pyland was again admitted to St. Bernard's. This time she was diagnosed with unipolar depressive disorder, pseudo seizures and seizure disorder.

-3-

She was given intensive psychotherapy to help her control her seizures. Her insured status expired on September 30, 1981.

Pyland's husband testified that she was suicidal and had attempted suicide by jumping from a car. Although the date of this event is not clear from the record, the evidence suggests that it occurred in late 1981 or in early 1982. In March 1982 Pyland underwent a psychiatric evaluation to determine whether she qualified for disability benefits from the Social Security Administration. Noting her history of seizures and claims of attempted suicide and depression, the evaluating psychiatrist observed that Pyland was pleasant and cooperative, her thinking was relevant and usually logical, and she was neither delusional nor did she experience hallucinations. The evaluating psychiatrist also found that Pyland was somewhat depressed and apathetic. In 1982 doctors took Pyland off seizure medication, and she no longer suffers from seizures.

Pyland has unsuccessfully attempted to obtain disability benefits since 1980. She filed applications for benefits in July and August 1980, which were both denied in September 1981. The Appeals Council denied her Request For Review in November 1981. She filed another application in February 1982, which was denied in March 1983. The Appeals Council denied another Request For Review in July 1983.

Pyland filed her present application for benefits in August 1992. The ALJ, relying on the denials of her previous applications, dismissed her request for a hearing based on *res judicata*. In October 1993 the Appeals Council remanded Pyland's case to the ALJ to consider Pyland's most recent application under the new sequential standard set forth at 20 C.F.R. § 404.1520. Although this standard was not in place at the time of Pyland's initial applications for benefits, it allows applicants previously denied benefits to reapply under the new standard.

A hearing *de novo* was held in January 1994. The ALJ issued a decision in January 1995 denying Pyland's disability claim. The ALJ, working through the five-step sequential standard, made the following determinations: (1) Pyland had not engaged in substantial gainful activity since the onset of her alleged disability; (2) she suffered from a severe mental impairment (bipolar disorder); (3) the impairment did not, however, meet or equal the level of severity for one of the Social Security Administration's listed impairments prior to the expiration of her insured status; (4) she had the residual functional capacity to perform her past relevant work as a secretary, despite any impairment; and (5) she could perform other substantial or gainful work. See Administrative Transcript, v.1, Notice of Decision at 1-5 (hereinafter ALJ Decision); see also 20 C.F.R. § 404.1520(b)-(f). The ALJ further determined that Pyland's allegations were not borne out by the record and that her subjective complaints of pain and fatigue were not "fully credible." ALJ Decision at 6.

Pyland again sought review from the Appeals Council which denied her request in November 1995, making the decision of the ALJ the final decision of the Commissioner. Pyland then sought judicial review in the United States District Court for the Eastern District of Arkansas which granted summary judgment in favor of the Commissioner in July 1997. See slip op. at 11. The district court affirmed the ALJ's findings that Pyland's impairment did not meet or equal one of the Social Security Administration's listed impairments and that she retained the residual functional capacity for her past work. The district court held that substantial evidence on the record as a whole supported these conclusions. This appeal followed.

**Discussion**

Our review of an ALJ's decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). We will not disturb an ALJ's determination if it is supported by substantial evidence

on the record as a whole.  See 42 U.S.C. § 405(g); Spradling v. Chater, 126 F.3d 1072, 1073-74 (8th Cir. 1997); Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991). This standard requires us to consider relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion, Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993), as well as evidence that detracts from the Commissioner's decision, Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  We may not reverse the Commissioner's decision merely because substantial evidence exists supporting a different outcome.  See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).

In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  See 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir. 1995) (per curiam) (citing Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990)).  Evidence of a disability subsequent to the expiration of one's insured status can be relevant, however, in helping to elucidate a medical condition during the time for which benefits might be rewarded. See Fowler v. Bowen, 866 F.2d 249, 252 (8th Cir. 1989) (Fowler); Martonik v. Heckler, 773 F.2d 236, 240-41 (8th Cir. 1985) (Martonik).  But see Milton v. Schweiker, 669 F.2d 554, 555 n.1 (8th Cir. 1982) (per curiam) (noting that a heart attack subsequent to the expiration of insured status without evidence of a heart condition during the relevant time period cannot serve as a basis for recovering disability benefits).

The five-step sequential standard is the test by which an ALJ determines if a claimant is disabled. 20 C.F.R. § 404.1520.  The first step involves a determination of whether the claimant is presently working.  Id. § 404.1520(b).  The second step involves a determination, based solely on medical evidence, of whether the claimant has a severe impairment or combination of impairments.  Id. § 404.1520(c).  The third step requires the ALJ to compare this impairment to a Listing of Impairments (Listing) and determine whether it meets or equals one of those listed.  Id. § 404.1520(d).  If the

claimant does not qualify for disability benefits at step three, steps four and five involve a determination of whether the claimant can perform past relevant work or any other work. Id. § 404.1520(e), (f).

Pyland argues that the ALJ erred in determining, at step three of the analysis, that her mental impairment did not have the symptoms meeting or equaling a depressive syndrome, which is one of the impairments in the Listing, and did not result in the functional limitations of an affective disorder. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. To meet or equal a depressive syndrome, the claimant must have at least four of the nine listed symptoms and the impairment must result in at least two of the four listed functional limitations of an affective disorder. Id. Pyland claims to manifest all but one of the symptoms for a depressive syndrome disability[5] and all but one of the functional limitations of an affective disorder.[6] In support of these claims, she presents evidence based on a psychiatric evaluation in March 1982, several months after the expiration of her insured status. She presents no further evidence to support "feelings of guilt or worthlessness," "decreased energy," "anhedonia or pervasive loss

---

[5]Pyland claims to suffer from (a) anhedonia or pervasive loss of interest in almost all activities; (b) appetite disturbance with change in weight; (c) sleep disturbance; (d) psychomotor agitation; (e) decreased energy; (f) feelings of guilt or worthlessness; (g) difficulty concentrating or thinking; and (h) thoughts of suicide. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)(1)(a)-(h). She does not claim, on this appeal, to have suffered from any "[h]allucinations, delusions or paranoid thinking." Id. § 12.04(A)(1)(i).

[6]Pyland claims that her bipolar disorder results in (a) marked restriction of activities of daily living; (b) marked difficulties in maintaining social functioning; and (c) repeated episodes of deterioration or decompensation in work or work-like settings which cause her to withdraw from that situation or to experience exacerbation of signs and symptoms. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). She does not claim, on this appeal, to have suffered from any "[d]eficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner." Id. § 12.04(B)(3).

of interest in almost all activities," "difficulty in concentrating or thinking," "sleep disturbance," or "appetite disturbance with change of weight." See id. § 12.04(A).

The Commissioner concedes that Pyland suffered psychomotor agitation from her psychologically based seizures, but contends that the evidence on the record fails to support Pyland's claims regarding any of the other required symptoms for a depressive syndrome disorder. See id. § 12.04(A)(1)(a)-(i). The Listing requires proof of at least four symptoms before the Commissioner can determine that a claimant suffers from a depressive syndrome. See id. § 12.04(A)(1). The Commissioner argues that Pyland has the burden of showing that she suffered at least four of the listed symptoms during the relevant time and has failed to carry that burden. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); see also 20 C.F.R. § 404.1520(a). We agree.

As noted above, evidence concerning ailments outside of the relevant time period can support or elucidate the severity of a condition. See Fowler, 866 F.2d at 252; Martonik, 773 F.2d at 240-41. However, evidence outside the relevant time period cannot serve as the only support for the disability claim. Such a holding would be contrary to the Social Security Act, 42 U.S.C. §§ 416(i), 423(c), which requires proof of disability during the time for which it is claimed. The only evidence that Pyland provides for meeting six of the nine depressive syndrome symptoms is a psychiatric evaluation performed almost 6 months after her insured status expired. Substantial evidence on the record supports, at most, a manifestation of two symptoms: psychomotor agitation, which the Commissioner concedes, and thoughts of suicide. A reasonable mind could conclude that her husband's testimony of a suicide attempt, which may or may not have occurred during the relevant time period, points to the existence of that symptom during the time for which benefits might be aewarded.[7] Two of the required four symptoms, however, is not enough.

_____

[7]The ALJ found the testimony of Pyland's husband to be unpersuasive and "motivated by the desire to see [his wife] obtain benefits." ALJ Decision at 5.

In addition, we note that Pyland's claim of functional limitations under § 12.04(B) is not supported by the record. There is some evidence that, prior to the expiration of her insured status, she was restricted in daily living, had trouble functioning socially, and had problems working. The Listing, however, requires the ALJ to assess whether the limitations on daily living and social functioning were "marked" or "seriously interfere[d] with the ability to function independently, appropriately and effectively" and whether deterioration or decompensation in work was "repeated." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). The ALJ determined that Pyland only suffered from "moderate" restrictions in daily activities and "slight" difficulties in social functioning with no deterioration or decompensation in work. Administrative Transcript, v.1, Psychiatric Review Technique Form at 3. These moderate and slight restrictions do not rise to the Listing's required level of severity. The substantial evidence standard requires that we evaluate the evidence in terms of the reasonableness of the ALJ's determination. The findings of moderate restrictions in her daily activities, slight difficulties in social functioning and no deterioration or decompensation in work are reasonable.

Likewise, the ALJ's determination that Pyland retained the residual functional capacity to perform her past relevant work as a secretary is supported by substantial evidence. The ALJ found that, if she observed routine seizure precautions such as avoiding unprotected high places or the operation of automotive equipment, Pyland could engage in substantial gainful activities. ALJ Decision at 3. He determined that her work as a secretary did not require a great deal of interpersonal contact and did not require any activity precluded by routine seizure precautions. ALJ Decision at 5. A reasonable mind could conclude that, based on the evidence, Pyland could perform her past relevant work as a secretary and, therefore, was not disabled. See Stephens v. Shalala, 50 F. 3d 538, 542 (8th Cir. 1995).

## Conclusion

In light of the foregoing, we hold that there is substantial evidence on the record as a whole to support the Commissioner's decision to deny disability benefits. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.