# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3960

_____

Roosevelt McKinney,

          Appellant

      v.

Kenneth S. Apfel, Commissioner,
Social Security Administration,

          Appellee.

\* Appeal from the United States
\* District Court for the
\* Southern District of Iowa.

_____

Submitted: June 16, 2000

Filed: October 2, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, and BYE, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Roosevelt McKinney appeals from the district court's[1] judgment affirming the denial of his application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) & 423, and for supplemental security income pursuant to Title XVI, 42 U.S.C. § 1381a. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

**I.**

McKinney was born on December 19, 1940. He has a high school education, and his past relevant work is that of a cab driver, general laborer, and waiter. McKinney filed an application for benefits on March 28, 1994, alleging that he has been unable to work since November 22, 1993, because of a work-related neck injury.

The Social Security Administration denied McKinney's application initially and on reconsideration. McKinney then requested and received a hearing before an administrative law judge (ALJ). The ALJ evaluated McKinney's claim according to the five-step sequential analysis prescribed by the social security regulations, see 20 C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step analysis), and denied benefits. The Appeals Council reviewed the ALJ's decision and remanded the case for further consideration of McKinney's mental impairments.

On remand, a second ALJ determined that McKinney was not engaged in substantial gainful activity and that he had severe impairments, including cervical spondylolisthesis[2] with disc space degeneration and retrolisthesis of C4-5, mild stenosis of the cervical spine, borderline intellectual functioning, a history of depression secondary to financial difficulties (in partial remission), and a substance addiction disorder. The ALJ determined, however, that McKinney's impairments did not meet the criteria found in the Listing of Impairments. See App. 1, Subpart P, Regulations No. 4. The ALJ further found that McKinney was unable to perform any of his past relevant work. After receiving testimony from a vocational expert, the ALJ concluded that McKinney possessed the residual functional capacity (RFC) to perform, with

---

[2]Spondylolisthesis is the "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it . . . ." Stedman's Medical Dictionary 1656 (26th ed. 1995).

certain limitations, a full range of light work. He also concluded that McKinney could perform a significant number of jobs in the national economy and thus was not disabled.

McKinney again petitioned the Appeals Council for review. The Appeals Council issued a partially favorable determination, finding that McKinney was disabled as of, but not prior to, December 19, 1995, his fifty-fifth birthday. McKinney then appealed to the district court, claiming the Commissioner erred in determining he was not disabled from November 22, 1993 to December 19, 1995. The district court affirmed, and this appeal followed.

## II.

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. See id. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see id., or because we would have decided the case differently. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

McKinney first argues that the ALJ incorrectly determined his RFC. Specifically, McKinney cites the ALJ's failure to consider his mental impairments in his RFC determination and the ALJ's failure to account for his inability to work full-time.

The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. See Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). In this case, the ALJ determined that McKinney possessed the RFC to lift 20 pounds occasionally and 10 pounds frequently. The Commissioner noted that McKinney could not perform work that required him to hold his head in a fixed position and that he was required to alternate between sitting and standing every hour. Further, the Commissioner determined that although McKinney could not do complex or technical work, he was capable of simple, repetitive work that did not require close attention to detail.

We cannot conclude that the ALJ's formulation of McKinney's RFC was error. The ALJ recognized that McKinney suffers from certain mental impairments and accordingly determined that McKinney could not perform complex or technical work. The ALJ also determined, however, that these impairments were not disabling. We believe substantial evidence supports this conclusion. McKinney claims he cannot work at an acceptable speed. There is testimony in the record, however, that McKinney was punctual, could concentrate, and possessed the ability to stay on task. Additionally, notes from job coaches indicate that McKinney was promptly completing his tasks and was even accomplishing extra work. Thus, the record supports the ALJ's conclusion that McKinney can work at a reasonable speed.

McKinney also alleges that he suffers from memory problems and from an inability to stay on task. The record indicates, however, that McKinney's mental status examinations were unremarkable and that he possesses average cognition and memory. Additionally, the record indicates that McKinney was punctual, that he paid attention to detail, and that he remembered instructions. McKinney's testimony reveals that he could recall his date of birth, his children's names and ages, his ex-wife's name, and recent personal experiences. The record therefore supports the ALJ's conclusions regarding McKinney's memory.

McKinney also claims the he is unable to work full-time because he suffers from disabling fatigue. In support of this contention, McKinney cites the testimony of a vocational evaluator who opined that McKinney should work only ten to fifteen hours per week. The ALJ found, however, that the evaluator had no medical training and that he was not qualified to render an opinion regarding McKinney's ability to work full-time. In addition, there is evidence that suggests that McKinney does not suffer from disabling fatigue. In 1994 McKinney told a vocational rehabilitation counselor that he was not tired and that he retained an adequate energy level. Mental exams indicated that McKinney was alert, and a 1995 record of a medical visit describes McKinney's energy level as "excellent." We conclude, therefore, that the ALJ's determination that McKinney could work full-time is supported by substantial evidence.

Second, we consider McKinney's argument that the ALJ should not have undertaken a credibility analysis regarding McKinney's subjective complaints of pain. Alternatively, McKinney argues that the ALJ should have credited his subjective complaints of pain. An ALJ may undertake a credibility analysis when the medical evidence regarding a claimant's disability is inconsistent. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Because we agree with the ALJ that the medical evidence does not uniformly support McKinney's claim of disability, we reject McKinney's contention that a credibility determination was unnecessary in this instance.

We outlined the factors to be considered in evaluating subjective complaints of pain in Polaski. See id. They include prior work records; observations by third parties and physicians regarding disability; daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medications; and functional restrictions. McKinney argues that the ALJ erred by failing to apply these factors in reaching his conclusion that McKinney's complaints were not credible. We note, however, that the ALJ specifically cited our holding in Polaski before addressing McKinney's complaints. The ALJ also referred to the Polaski analysis undertaken in McKinney's prior appearance before an ALJ. Where

the record is inconsistent with an individual's subjective complaints of pain, the ALJ may properly discount them. See id. In this case, the ALJ cited numerous inconsistencies in the record as a whole. The ALJ referred to the medical evidence, to McKinney's admission that he was able to perform light physical labor, to the absence of side effects resulting from medication, to McKinney's ability to conduct daily activities, to the lack of evidence supporting McKinney's claims of mental impairment, and to the fact that McKinney had reopened a workers' compensation claim. Accordingly, we are satisfied that substantial evidence supports the ALJ's rejection of McKinney's subjective complaints.

Third, McKinney argues that the ALJ erred in rejecting the testimony of the vocational evaluators in favor of the testimony of the government's vocational expert. McKinney presented two vocational evaluators who testified regarding McKinney's mental impairments. The ALJ discounted this testimony, however, in favor of the testimony of the government's vocational expert. McKinney argues, relying on Ekeland v. Bowen, 899 F.2d 719 (8th Cir. 1990), that the ALJ committed error in "completely disregarding" the testimony of the vocational evaluators in favor of the vocational expert. McKinney argues that this error was especially egregious in light of the ALJ's failure to include McKinney's mental impairments in a hypothetical question posed to the expert.

In Ekeland, we reversed a judgment denying benefits because the ALJ, in part due to an incomplete record, had ignored the findings of a claimant's vocational expert. See id. The record in this case indicates, however, that the ALJ did not completely disregard or ignore the testimony of McKinney's vocational evaluators. To the contrary, the ALJ fully considered their testimony and concluded that it was inconsistent with and unsupported by the record as a whole. The ALJ discounted the testimony of the first vocational evaluator because her testimony was inconsistent with the notes of McKinney's immediate job coaches, despite her claim that she based her opinions solely on their input. Additionally, the ALJ noted that the first vocational

evaluator was neither medically trained nor a mental health expert. The ALJ also fully examined the testimony of the second vocational evaluator. This testimony included a recognition of McKinney's various employment strengths and McKinney's poor score on an employment test. The second vocational evaluator admitted, however, that the test was susceptible to manipulation by someone wishing to avoid work.

McKinney complains that the hypothetical question posed by the ALJ to the government's vocational expert failed to include his mental impairments. We recognize that "[t]estimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). A hypothetical question, however, need only include impairments that are supported by the record and which the ALJ accepts as valid. See Prosch, 201 F.3d at 1015. In this case, the ALJ found that McKinney's claims of disabling mental impairment were not supported by the record and thus were not credible. The ALJ therefore properly excluded the alleged impairments from the hypothetical question.

Finally, McKinney challenges the district court's finding that alcoholism was a contributing material factor to his disability. We need not address this argument, however, because substantial evidence supports the Commissioner's denial of benefits for the time period in question.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-