# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1073

———————

Velma R. Zeiler,                          *
                                          *
    Plaintiff - Appellant,          *
                                          * Appeal from the United States
v.                                        * District Court for the Western
                                          * District of Missouri.
Jo Anne B. Barnhart, Commissioner         *
of Social Security Administration,        *
                                          *
    Defendant - Appellee.           *

———————

Submitted: September 16, 2004
Filed: October 7, 2004

———————

Before MURPHY, McMILLIAN, and BENTON, Circuit Judges.

———————

MURPHY, Circuit Judge.

    Velma Zeiler's application for disability insurance benefits under Title II of the Social Security Act was denied by an administrative law judge (ALJ). Her case was made part of a simplified appeals process being tested; under the test procedure the ALJ's decision represents the final decision of the Commissioner and an appeal is taken directly to federal court. Zeiler thus appealed to the district court,[1] which affirmed the Commissioner's decision. Zeiler appeals, and we affirm.

———————

[1]The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri.

Zeiler was born in 1941 and has a high school education. She worked full time as a clerk and later as an assembly line worker. After her assembly plant relocated in 1994, she occasionally cleaned houses and offices. She says that she became disabled in April 1994 and that a narrowing of the space between her shoulder joints causes pain and restricts her movement.[2] Zeiler reports worse pain in her right shoulder. The record shows that she repeatedly sought medical treatment for shoulder problems and that pain medication was often prescribed.

X-rays of both shoulders taken in April 1998 appeared normal, but an MRI of the right shoulder taken about six months later revealed mild acromioclavicular hypertrophic changes with narrowing of the humeral-acromial joint space and mild tendinosis of the supraspinatous tendon. According to G.E. Finke, D.O., a January 1999 x-ray of Zeiler's right shoulder indicated mild degenerative joint disease of the acromioclavicular joint and narrowing of the acromion humeral head distance. Dr. Finke suspected rotator cuff tendon injury or changes. George Adam Flowers, M.D., an orthopedist, examined Zeiler on January 26 and February 2, 1999. He studied a previous MRI and concluded that her rotator cuff was intact. He observed that she had excellent range of motion and notable pain, and he interpreted an x-ray of her right shoulder to be consistent with osteoarthritis, noting some high riding of the glenohumeral joint. On September 17, 1999, Zeiler saw Kirk D. Ridley, M.D., her family doctor. Dr. Ridley assessed probable arthritis and bursitis and a possible rotator cuff tear. When he saw her again on November 15, 1999, he noted grinding and crepitance in her shoulder and difficulty in totally abducting her arm over her head; he also observed that the MRI report indicated no rotator cuff tear.

---

[2]The disability report she filed also listed bronchial asthma and mental and emotional problems. The ALJ found that these complaints did not arise from medically determined impairments, and Zeiler does not contest these findings on appeal.

Zeiler's insured status ended on December 31, 1999. The record reflects that she continued to have shoulder complaints. In May 2000 an arthroscopic decompression acromioplasty procedure was performed on her right shoulder, and in August 2000 a decompression acromioplasty arthroscopic procedure with debridement of the shoulder joint was performed on her left shoulder.

Zeiler applied for disability insurance benefits in March 2000. She filled out a work history report for the Social Security Administration in which she described her work as a clerk, assembly line worker, and house cleaner. She indicated that she never lifted more than ten pounds in these positions. She also filled out a questionnaire for the Missouri Department of Elementary and Secondary Education Division of Vocational Rehabilitation in May 2000. On that form she claimed no problems sitting, standing, walking, kneeling, or squatting. She reported no problems using her hands unless lifting, pulling, or pushing was involved, and no problems climbing stairs unless she pulled on the hand rail. She claimed problems lifting and carrying, reaching forward and backward, and working or reaching overhead. She stated that she exercises by walking and engages in everyday activities as her pain allows, including buying food, cooking, and caring for her flowers.

When Zeiler's application was denied she sought a hearing, and one was held on July 26, 2001. Zeiler and her husband testified, and she was represented by an attorney. The ALJ asked her about her work and medical history and daily activities. She testified that she goes grocery shopping with her husband, drives, visits with family, goes to church about once a month, watches television, reads, and talks on the phone. She said she could walk for ten to fifteen minutes and lies down thirty to forty five minutes daily. No physicians testified at her hearing, and no state agency physician rendered an opinion.

The only opinion in the record stating that Zeiler should not work was that of Jim G. Lemons, Ed.D. Dr. Lemons is a licensed psychologist who sent Zeiler's

attorney a letter on July 23, 2001, stating that Zeiler's pain "render[s] her incapable of gainful employment on a permanent basis."  Dr. Lemons knows Zeiler because he has been treating her husband for chronic pain, but he has not opened an official record for her.  He states that he has worked with Zeiler's husband "over the recent years" and notes that Zeiler has faced issues resulting in chronic pain "[i]n more recent months."

The ALJ engaged in the five step analysis outlined in 20 C.F.R. § 404.1520. In the first step he found that Zeiler did some cleaning work after the alleged onset date of her disability but that her earnings during this period were too low to qualify the employment as substantial gainful work.  Second, the ALJ found that Zeiler suffered from "mild acromioclavicular hypertrophic changes with narrowing of humeral-acromonial joint space and mild tendinosis of the supraspinatus tendon" and that these impairments were severe.  Third, he found that the impairments, although severe, do not meet or medically equal one of the impairments listed in the regulations as requiring a finding of disability.  The ALJ's analysis stopped at the fourth step because he found that Zeiler's impairments did not prevent her from doing her past relevant work at the expiration of her covered period.

In determining that Zeiler had the residual functional capacity (RFC) to perform the requirements of her past relevant work, the ALJ considered Zeiler's description of her symptoms and the medical opinions in the record.  He found her subjective complaints not fully credible and her symptoms not as limiting as she alleged.  He considered her testimony regarding her daily activities and the medical evidence regarding her condition prior to the expiration of her insured status.  He determined that during her insured period she had full range of motion in her shoulders, had some weakness in her biceps and triceps, was being treated symptomatically for arthritis pain, and could sit, stand, and walk unimpaired.  Based on this assessment, the ALJ determined she had the RFC to do a full range of light work with no overhead lifting.  He then examined the requirements of her past work

as she had described it and found that she could have met the demands of her work as a clerk and assembler because they required only light exertion.

Zeiler argues on appeal here that the ALJ did not consider the functional demands of her prior work activity when deciding that she could perform her past relevant work and that his assessment of her RFC was not supported by substantial evidence on the record as a whole. We review de novo a district court's decision affirming the denial of social security benefits. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). In conducting this review, we must "determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole." Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). To determine whether the evidence is substantial, "we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." Id. We are not permitted to reverse "merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently." Davis, 239 F.3d at 966.

Zeiler first argues that the ALJ's decision does not indicate he considered the functional demands of her past work and that it does not therefore meet the requirements set in Groeper v. Sullivan, 932 F.2d 1234 (8th Cir. 1991). In Groeper we held that an ALJ must make explicit findings on the demands of the claimant's past work. Id. at 1239. Here the ALJ found that in her work as a clerk and assembler Zeiler never had to lift more than ten pounds and stood much of the day. The ALJ relied on Zeiler's own description of her past duties in making these findings, and he also noted that she had stopped her assembly work in 1994 because the plant relocated. There is substantial evidence in the record to support the ALJ's characterization of her past work as requiring light exertion.

Zeiler also argues that the ALJ did not properly assess her RFC. She makes three contentions: the RFC finding is not based on medical evidence, the ALJ did not consider the effects of her nonexertional impairments, and the ALJ did not consider her allegations of pain. She cites Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001), for the proposition that the RFC is a medical question. She contends that the RFC assessment in her case is invalid because it is based on the ALJ's own opinion of her abilities. Zeiler's reliance on Lauer is misplaced because in that case the ALJ had substituted his opinion for that of a treating psychiatrist and examining psychologist, but here there was no expert opinion of disability. The only opinion in the record was from Dr. Lemons, but that letter does not bear much weight in this analysis because he was not treating Zeiler and he did not give an opinion as to her condition during the relevant time period. When determining a claimant's RFC, the ALJ should consider all relevant evidence, including medical records, the observations of doctors and third parties, and the claimant's own descriptions. See Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002). The ALJ's opinion indicates he properly considered the available medical evidence and the testimony of Zeiler and her husband when determining her RFC.

Zeiler next contends that the ALJ failed to consider the effect of her nonexertional impairments when assessing her RFC. She argues that her testimony indicated she has problems concentrating because of her pain medication, has lost grip strength, and needs to lie down during the day. The rest of the record does not substantially support these allegations, however. She did not complain to her doctors that her pain medication made concentration difficult. During a January 1999 visit to an orthopedist, her intrinsic hand strength was measured at 5/5. The Commissioner further notes that any loss of Zeiler's grip strength is accommodated by the ALJ's decision that she is limited to light work. Finally, there is no medical evidence supporting Zeiler's claim that she needs to lie down during the day.

Zeiler's last contention regarding the RFC assessment is that the ALJ failed to consider her allegations of pain. Subjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, but they can be discounted if the ALJ finds inconsistencies in the record as a whole. Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997). Zeiler complains that the ALJ disregarded her testimony and that of her husband when he wrote, "Considering the record as a whole, the Administrative Law Judge finds the claimant's subjective complaints to be not fully credible." The quoted statement is not merely a cursory statement as she suggests, for it leads into the ALJ's discussion of the testimony by Zeiler and her husband about her daily activities and her treatment history. There is substantial evidence in the record to support the ALJ's finding that Zeiler was not as limited as she claimed. In addition to the evidence cited by the ALJ, her responses to the May 2000 questionnaire are inconsistent with her testimony that she could not stand or walk for long periods, and the month long car trip she took in 1995 is inconsistent with a finding of disability. The ALJ properly considered Zeiler's symptoms when determining her RFC.

There was substantial evidence in the record as a whole to find that Zeiler was not disabled when her insured status expired. Accordingly, we affirm the judgment of the district court.

_____