**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2226
_____

| | | |
|---|---|---|
| Phyllis Cox, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Jo Anne B. Barnhart, Commissioner, | * | Eastern District of Arkansas |
| Social Security Administration, | * | |
| | * | |
| | * | |
| | * | |
| Defendant - Appellee. | * | |
| | * | |

_____

Submitted: November 16, 2006
Filed: December 22, 2006
_____

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.
_____

MURPHY, Circuit Judge.

Phyllis Cox applied for disability insurance benefits alleging she could not work because of back pain, carpal tunnel syndrome and other ailments. After a second remand from the district court under sentence four of 42 U.S.C. § 405(g), an administrative law judge (ALJ) determined that Cox could perform sedentary work that is available in many positions both locally and nationally and concluded that she

was not disabled. The district court[1] ruled in favor of the Commissioner of Social Security upholding the denial of benefits and dismissed the case with prejudice. Cox appeals, arguing there was insufficient evidence to support the conclusion that she was not disabled within the meaning of the Social Security Act and that the ALJ's credibility determinations were not supported by the weight of the evidence. We affirm.

Cox was born in 1952, and she has a high school education. She worked as an assembly worker and a material handler, but stopped working on October 13, 1995 after a back injury sustained at work. Her insurance benefits expired on December 31, 1995. In early 1995 Cox was diagnosed with chronic obstructive pulmonary disease (COPD), a disease characterized by gradual loss of lung function. Around this time, she was treated for high blood pressure, carpal tunnel syndrome, and back pain. She also took medication for depression and anxiety.

Starting in December 1994, Cox's primary doctor was family practitioner Dr. Sanders McKee. He diagnosed Cox's COPD and ordered a CT scan after she complained of continued back pain. Although the scan was interpreted as normal, Dr. McKee recommended physical therapy for her continued back pain in January 1995 and referred her to a pain clinic. Cox first saw Dr. Mark Hackbarth, who specializes in pain management, in March 1995. He examined her back and hips and found minimal tenderness although Cox reported her pain level as being between seven and ten on a scale of ten. Dr. Hackbarth also reviewed the CT scan and found it to be unremarkable.

Throughout 1995 Dr. Hackbarth noted improvement in Cox's back pain and range of motion. In May 1996 he released Cox from his treatment and stated in a letter to her primary physician that he ordered a functional capacity evaluation for her

[1]The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas, presiding.

with a return to work shortly afterward depending upon the results of the test. No functional capacity evaluation was completed, however, and Cox did not return to work.

In 1998 Cox returned to the care of Dr. Hackbarth, and he wrote a letter stating that Cox's condition had not changed dramatically since he released her from his care in 1996. He stated that she was unable to engage in prolonged walking, sitting, or standing and that she was never free from pain. In 2000 Dr. Rebecca Barrett-Tuck, a neurosurgeon, had Cox undergo an MRI and found a small disc rupture which she determined had been present in 1995.

Cox filed an application for disability insurance benefits on June 18, 1997, claiming she had been disabled since October 13, 1995 because of back problems and bilateral carpal tunnel syndrome. She also alleged weakness, pain, fatigue and difficulty in breathing. She estimated that she could stand and walk for two and one half to three hours and sit for two hours before she had to rest. The Social Security Administration denied her claim initially and again on reconsideration. A hearing was held before an ALJ on February 20, 1998, at which she testified that she did not drive often because of fatigue and numbness in her legs and hands and that she was only able to do limited household work, such as cooking with a crock pot or loading the dishwasher.

The ALJ found that Cox did not have a severe impairment and denied her claim. Cox requested review, which was denied by the Appeals Council. She then sought judicial review in the United States District Court for the Eastern District of Arkansas. The district court reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), finding that the ALJ had erred by concluding that Cox's condition was not severe.

In response to the district court's remand, a second hearing was held before an ALJ on June 7, 2001. The ALJ issued another decision two months later concluding

that Cox could perform light work and was not disabled. The Appeals Council denied Cox's review, and she appealed to the district court which again reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). The court concluded that the ALJ had erred in determining that she was able to do light work because Dr. Hackbarth's 1998 opinion found her symptoms could be exacerbated by prolonged sitting or standing. The court determined that "[t]he best evidence in the record regarding Plaintiff's functional abilities during the relevant time period is from Mark Hackbarth, M.D" and that the ALJ had not given proper weight to Dr. Hackbarth's 1998 letter. It directed the ALJ to employ a vocational expert to testify about whether Cox could perform her past job or other jobs with restrictions.

Following the district court's second remand to the Commissioner, an additional hearing was held before an ALJ on April 28, 2004. Vocational expert Vance Sales testified at the hearing and the ALJ asked Sales to respond to a hypothetical question: Could a woman the same age as Cox, with the same education and work experience, with the ability to sit for six hours and stand and walk for two hours of an average workday, and with the ability to lift and carry ten pounds at a time, be able to work at her past job or at any other employment position? Sales testified that a person with these limitations could not perform the jobs Cox had worked at previously, but that she could work as a sedentary assembler (2300 jobs in the state; 156,000 jobs nationally) or as a sedentary cashier (5800 jobs in the state; 584,000 jobs nationally).

The ALJ then engaged in the five step analysis outlined in 20 C.F.R. § 404.1520. First he found that Cox had not engaged in substantial gainful activity since her back accident on October 13, 1995. See 20 C.F.R. § 416.1520(a)(4)(i) (2004). Next the ALJ found Cox met the requirements to qualify as disabled under the Social Security regulations as of the date she last worked and continued to meet those requirements through the last day she was insured. See 20 C.F.R. § 416.1520(a)(4)(ii) (2004). At the third step, the ALJ found the evidence did not support the existence of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P, which would

have automatically qualified Cox as disabled. <u>See</u> 20 C.F.R. § 416.1520(a)(4)(iii) (2004).

Because the ALJ did not find that Cox met the requirements of a listed impediment, he proceeded to the fourth and fifth steps to evaluate if she would be able to return to work and measured her residual functional capacity. The ALJ identified a number of inconsistencies between Cox's claims and the medical evidence. He noted that her CT scan had disclosed no significant impairment regarding her lumbar spine, that Dr. Hackbarth had recorded notes on several dates when her pain and range of motion had improved during the insured period, that her hypertension had appeared to be related to her sodium intake and thus could be altered with behavior modifications, that Dr. Hackbarth had acknowledged that Cox could return to work in his 1996 checkup, that she had not alleged mental disabilities in her initial application, that there was no evidence that she had been treated by a mental health professional, that earlier testimony had showed she was able to drive, launder clothes and visit friends, and that she had smoked more than a pack of cigarettes per day during the insured period. Based on these inconsistencies, the ALJ found that Cox's "subjective allegations were not borne out by the overall record nor found to be fully credible."

The ALJ determined Cox could lift up to ten pounds, sit for six hours of an eight hour day, and stand or walk for two hours of an eight hour day. Relying on Sales's testimony, the ALJ determined that Cox could not perform her past work, <u>see</u> 20 C.F.R. § 416.1520(a)(4)(iv) (2004), and that her impairment would not prevent her from doing the available jobs identified by Sales. He then concluded that she was not disabled and that her claim for benefits should be denied. <u>See</u> 20 C.F.R. § 416.1520(a)(4)(v) (2004). Cox appealed this decision to the Appeals Council, which denied her request for review.

Cox next appealed to the district court, claiming that the ALJ erred in his assessment of her residual functional capacity. The district court acknowledged the

ALJ's reliance on vocational expert Sales and stated that the ALJ was not bound by the 1998 letter from Dr. Hackbarth because it had been written three years after Cox's coverage expired. The court concluded that the ALJ had not erred in his overall credibility assessment and affirmed the Commissioner's decision finding that Cox was not disabled on April 26, 2006. Cox appeals the judgment of the district court affirming the Commissioner's final decision, arguing that there was not substantial evidence for the ALJ's finding that Cox had a residual functional capacity for sedentary work and that the ALJ's credibility determination was flawed.

We review de novo a district court's decision affirming the denial of social security benefits. Zeiler v. Barnhart, 384 F.3d 932, 935 (8th Cir. 2004). The key issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Sultan v. Barnhart, 368 F.3d 857, 862 (8th Cir. 2004). Substantial evidence is "less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). To determine whether the evidence is substantial "we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." Id. We may not reverse just because substantial evidence exists that would support a contrary outcome or because we would have decided the case differently. Zeiler, 384 F.3d at 935.

Cox contends that the ALJ's conclusions about her residual functional capacity are not supported by substantial evidence. She points out that sedentary work requires the ability to remain seated for approximately six hours with normal breaks, see SOC. SEC. RUL. NO. 96-9P, DETERMINING CAPABILITY TO DO OTHER WORK – IMPLICATIONS OF A FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK 6 (July 2, 1996)(1996 WL 374185), which conflicts with Dr. Hackbarth's 1998 letter that any type of prolonged sitting may exacerbate her pain. Cox argues that in determining her residual functional capacity the ALJ should have given substantial weight to the 1998 opinion of Dr. Hackbarth. She also points to the district court's statement in its December 2003 remand that Dr. Hackbarth's 1998 letter

was the best evidence of her abilities and argues the ALJ did not fulfill the court's order on remand because he essentially ignored the 1998 evidence.

To be entitled to benefits Cox must prove she was disabled before her insurance expired on December 13, 1995.  See Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998). Evidence from outside the insured period can be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded."  Id. at 877. Although the ALJ did not give Dr. Hackbarth's opinion controlling weight, he did not ignore it entirely as Cox contends.  A treating physician's opinion should be given controlling weight if it is not inconsistent with other substantial evidence in the record. Sultan, 368 F.3d at 863.  Here, the ALJ was entitled to grant Dr. Hackbarth's opinion less deference because of the inconsistencies the judge identified and because the letter had been written three years after Cox's benefits expired.  Dr. Hackbarth also concluded in 1996 that Cox could return to work after taking a functional capacity evaluation.  Although the record does not show why that evaluation was not completed, Cox has the burden to offer the evidence necessary to make a valid decision about her claim.  See 20 C.F.R. § 404.1512(a).  Moreover, the ALJ did not fail to meet the requirements set out in the remand order.  The ALJ considered the 1998 letter, hired a vocational expert to evaluate Cox's capabilities, and properly weighed the evidence as a whole.  There is substantial evidence in the record that supports the ALJ's decision.

Cox next argues that the hypothetical question given to Sales was inappropriate because the record does not support a finding that she can sit for six hours of an eight hour workday and Sales's testimony should therefore be disregarded.  Because the hypothetical was based upon the ALJ's determination of Cox's residual functional capacity which is supported by the record, the hypothetical was properly framed and the ALJ's reliance on Sales's testimony was appropriate.

Cox finally argues that the ALJ's credibility analysis was flawed because he ignored evidence in the record that was inconsistent with his findings.  She points out

that he did not address Dr. Barrett-Tuck's finding of a disc rupture and that there was evidence in the record that conflicted with the ALJ's finding that Cox's pain level improved throughout 1995. She argues that the ALJ should not have relied on Dr. Hackbarth's statement that she was ready to return to work because it was conditioned on the functional capacity evaluation which was never done. She argues the ALJ overstated Cox's daily activities in conflict with her testimony at her initial hearing about her limitations.

Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (offering a list of factors the ALJ should consider in reviewing subjective complaints). Id. Because the ALJ was in a better position to evaluate credibility, we defer to his credibility determinations as long as they were supported by good reasons and substantial evidence. Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).

Here, the ALJ did not err by discounting neurosurgeon Barrett-Tuck's findings because there is no indication they were based on an evaluation of Cox's 1995 CT scan, her notes were taken five years after that scan, the notes did not suggest that the small rupture shown in the 2000 MRI affected Cox's functional capacity, and Cox had been involved in a car accident in 1999 before her examination by Dr. Barrett-Tuck. The medical evidence supports a finding that Cox's overall pain decreased after she started receiving pain treatments from Dr. Hackbarth, even if she continued to have individual days with high pain levels.

The ALJ also did not err by considering Dr. Hackbarth's 1996 letter releasing her to return to work because the release was not conditioned on the functional capacity evaluation, which was instead intended to offer guidance for her return. Finally, even if the ALJ had overestimated her capabilities, that would not have shown that his overall credibility decision was flawed because this was only one of the several inconsistencies he identified. The ALJ properly evaluated the factors outlined

in <u>Polaski</u> and had good reasons to find that Cox's statements about her condition were not fully credible because of the inconsistencies within the record.

For these reasons we affirm the judgment of the district court.

_____