# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-2269

———————————————

Jana M. Turpin

*Plaintiff - Appellee*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellant*

—————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

—————————

Submitted: March 13, 2014
Filed: May 7, 2014

—————————

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

—————————

MURPHY, Circuit Judge.

Jana M. Turpin applied for disability insurance benefits, stating that she had chronic obstructive pulmonary disease (COPD) and emphysema. After an initial denial of her application, she requested a hearing before an administrative law judge (ALJ). The ALJ denied Turpin's application, concluding that she was not disabled because there were jobs she could have performed during the relevant period. The Appeals Council then denied review. Turpin appealed the Commissioner's final

decision to the district court, which reversed. The government now appeals. After studying the record, we conclude that the ALJ's decision is supported by substantial evidence on the record. We reverse the district court and affirm the Commissioner's final decision.

Turpin applied for disability insurance benefits under Title II of the Social Security Act in 2009. She stated that her ability to work was limited due to COPD and emphysema, and that her disability began on June 30, 2005 which was also determined to be her date last insured. Turpin listed previous work as a property manager at an apartment complex from 1985 to 1993, a school bus driver from 1994 to 1997, a dishwasher in a school cafeteria from 1998 to 2001, and a receptionist in her husband's plumbing business from 2007 to 2008. She later testified that she had also worked as a salesperson in a hardware store in 1997.

In February 2005 Turpin consulted with pain specialist Dr. Mark Chaplick, D.O., who sent a report of the visit to Dr. Todd Stastny, M.D., Turpin's treating physician. At that time Turpin had a two month history of back, hip, and right leg pain that she rated as 4 to 6 on a 10 point scale. A January 2005 MRI showed mild disc bulging at multiple levels in Turpin's back. Dr. Chaplick's impression was that Turpin had right lumbar radiculopathy, a spinal nerve disease, "secondary to spinal stenosis and intervertebral bulging disks." Dr. Chaplick treated Turpin with lumbar epidural steroid injections, reporting to Dr. Stastny after a subsequent visit that Turpin's symptoms were "really out of proportion" to the MRI findings.

In March Turpin told Dr. Chaplick that her pain had improved by 50% and received another epidural injection. Turpin then received diagnostic lumbar facet injections in April. Dr. Chaplick wrote to Dr. Stastny in June that Turpin's response to these injections had been "good." He then performed radiofrequency ablation on her spine, a procedure to heat and destroy nerve endings. Dr. Chaplick wrote on July 20 that Turpin still reported right leg pain, but by July 25 Turpin rated her pain as a

0 to 4 and was "doing quite well" without taking pain medication. Dr. Chaplick stated that her exam was "fairly normal" and did not recommend further treatment. Turpin did not see Dr. Chaplick again although she visited Dr. Stastny for pain in September 2005.

Turpin was later seen for pain in December 2006 by a rheumatologist who noted complaints of tenderness but stated that she "[did] not really fulfill the criteria for fibromyalgia." Turpin was hospitalized multiple times over the next few years for lung problems including COPD and pneumonia. After Turpin was admitted to the hospital in April 2008 with pneumonia, her history of asthmatic bronchitis, emphysema, and smoking was noted. She reported in 2008 that she had smoked for 30 years but had quit the previous year due to difficulty breathing. Turpin was also treated for depression throughout this time period, including in 2004 and in September 2005.

Turpin submitted her application for disability insurance benefits in October 2009 with a protective filing date of March 31, 2009. Her application was denied in December 2009 based upon a determination that she could not establish disability prior to her last insured date. Turpin requested a hearing before an ALJ, which was held on May 10, 2011. In a prehearing questionnaire provided by Turpin, Dr. Stastny gave his opinion on her health issues, specifically noting a diagnosis of "oxygen dependent COPD." Dr. Stastny checked "yes" in response to whether these conditions had been present since 2005, writing underneath "[t]he back issues at least."

When asked at the hearing why she selected the June 30, 2005 onset date, Turpin testified that she did not remember that exact date but "that's when all my back problems started." She also stated that her back problems began when she drove a school bus with a manual clutch and worsened when she worked as a dishwasher. Turpin testified that in 2005 she was in "excruciating pain" due to her back and only had six weeks of relief. According to Turpin, she had chronic bronchitis "even back

then" but before her lungs deteriorated "it was basically my back." Turpin testified that she had taken an antidepressant since 1989 and that in 2005 her symptoms of depression included anger and frequent crying. She said that at that time she could do some housework, babysit her granddaughter, socialize with friends, and shop for groceries if she leaned on a cart and her husband carried the bags. She could stand for 5 to 10 minutes at a time, but could not walk even half a block.

The ALJ held a supplemental hearing on July 14, 2011 in order to hear medical expert testimony. Dr. Arthur Lorber, M.D., an orthopedic surgeon, testified regarding Turpin's condition in 2005 based on a review of her medical records. Dr. Lorber stated that there was no evidence to support the diagnosis of lumbar radiculopathy because the test had not been conducted properly and it was inconsistent in its results. Dr. Lorber stated that in his opinion Turpin "could function at a limited range of light work activities" and described restrictions on her ability to work. Vocational expert Marianne Lumpe then testified that an individual with these restrictions could not perform Turpin's past work but could perform other work such as cashier, subassembler, or photocopy machine operator.

After conducting the five step eligibility analysis found in 20 C.F.R. § 404.1520, the ALJ denied Turpin's application for disability benefits in a September 2011 opinion. At the first step, the ALJ found that Turpin had not engaged in substantial gainful activity during the time between her onset date and date last insured, which here was June 30, 2005. See 20 C.F.R. § 404.1520(a)(4)(i). The ALJ next found that through her date last insured Turpin had three severe impairments: sleep apnea, degenerative disc disease, and obesity. See 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ determined at the third step that Turpin's impairments did not automatically qualify her for disability benefits. See 20 C.F.R. § 404.1520(a)(4)(iii). At the fourth step, the ALJ found that Turpin's residual functional capacity (RFC) prevented her from performing any of her past relevant work through June 30, 2005. See 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth step the

ALJ found that she was not disabled, however, because there were jobs she could have performed. See 20 C.F.R. § 404.1520(a)(4)(v).

In conducting this analysis, the ALJ found that Turpin had the following residual functional capacity (RFC) through June 30, 2005: Turpin could "sit for 6 out of 8 hours for 30 minutes at one time"; "stand or walk for 4 out of 8 hours for 30 minutes at one time"; "lift[,] carry, push, or pull 10 pounds frequently and up to 20 pounds occasionally"; "only occasionally push or pull with her lower extremities"; and "occasionally climb stairs or ramps; stoop; and kneel." She "should never use foot pedals," "should never climb ladders, ropes, or scaffolding," "should never crawl," and "should avoid vibration." The ALJ found that Turpin's testimony regarding "the intensity, persistence, and limiting effects" of her symptoms was "not entirely credible." The ALJ gave significant weight to Dr. Lorber's opinion, noting it was consistent with the medical evidence in the record, but "little weight" to Dr. Stastny's opinion because it was "not well supported by medically acceptable clinical and laboratory diagnostic techniques" and "inconsistent with other substantial evidence."

Turpin appealed the initial denial, and the Appeals Council denied review in January 2012. Turpin then filed this action in March 2012, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). The district court reversed in February 2013 and denied the government's motion to alter or amend judgment. The government now appeals.

We review de novo a decision of a district court reversing the denial of social security benefits. Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). We affirm the ALJ's decision if it is supported by substantial evidence, which does not require a preponderance of the evidence but only "enough that a reasonable mind would find it adequate to support the decision," id., and the Commissioner applied the correct legal standards, Mason v. Barnhart, 406 F.3d 962, 964 (8th Cir. 2005). "We may not reverse merely because substantial evidence also exists that

-5-

would support a contrary outcome, or because we would have decided the case differently." Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001).

To show disability, Turpin must demonstrate "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). The ALJ found, and Turpin does not dispute, that her last insured date was June 30, 2005. If an applicant for disability benefits is not insured for Title II purposes, then we only consider the applicant's medical condition as of his or her date last insured. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997).

The ALJ must evaluate the record as a whole and while treating physicians' opinions are "entitled to special weight," they are not automatically controlling. Bentley v. Shalala, 52 F.3d 784, 785–86 (8th Cir. 1995). An ALJ may discount or disregard a treating physician's opinion "where other medical assessments 'are supported by better or more thorough medical evidence,' or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (internal citation omitted). An ALJ may give less weight to a conclusory or inconsistent opinion by a treating physician. Samons v. Astrue, 497 F.3d 813, 818–19 (8th Cir. 2007); see also Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012). At the fifth step of the sequential evaluation process, the opinion of a non examining doctor usually is not "substantial evidence on the record as a whole" and neither is the vocational expert's testimony when responding to a hypothetical based on the opinion of a non examining doctor. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000); see also Landess v. Weinberger, 490 F.2d 1187, 1189–90 (8th Cir. 1974).

We defer to the ALJ's evaluation of Turpin's credibility provided that this determination is supported by "good reasons and substantial evidence." Cox v.

Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). An ALJ weighs the credibility of a claimant's subjective complaints of pain by considering multiple factors, including daily activities, and may discredit complaints if they are "inconsistent with the evidence as a whole," Clark v. Chater, 75 F.3d 414, 417 (8th Cir. 1996), or if the claimant does not seek regular medical treatment, Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). We do not consider impairments controllable by treatment or medication to be disabling. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). In posing a hypothetical to a vocational expert, an ALJ need only include impairments that the ALJ finds credible. Forte v. Barnhart, 377 F.3d 892, 897 (8th Cir. 2004).

Turpin argues that the ALJ's finding was not supported by substantial evidence. She asserts that the ALJ should have given greater weight to the opinion of Dr. Stastny because he was her treating physician and had the most extensive knowledge of her medical condition. She further asserts that the ALJ erred in assigning weight to Dr. Lorber's opinion because he was not a treating physician. See Nevland, 204 F.3d at 858; Landess, 490 F.2d at 1189–90. Turpin finally contends that the ALJ erred by not considering depression, chronic bronchitis, and radiculopathy to be severe impairments and by not analyzing the "combined effect" of her impairments.

The government argues that the ALJ's decision was based on substantial evidence because Turpin did not establish disability on June 30, 2005, which as the onset date and date last insured is the relevant time period. The government argues that even if Turpin had established disabling back pain, she did not demonstrate that such disability had continued for twelve months. The government asserts that the ALJ properly gave less weight to Stastny's opinion after finding that it was not well supported and inconsistent with other substantial evidence. The government asserts that although testimony from non examining physicians is disfavored, Dr. Lorber was a medical expert, this case involved a remote period of time, and the ALJ did not rely solely on Dr. Lorber's testimony. According to the government, the ALJ properly determined that the evidence from the relevant time period did not support

impairments related to lumbar radiculopathy, chronic bronchitis, or depression. The government further asserts that the ALJ's assessment of Turpin's residual functional capacity (RFC) accounted for any impairments from lumbar radiculopathy.

We conclude that the ALJ's decision was supported by substantial evidence on the record. Although testimony from non treating physicians is not substantial evidence on its own, Nevland, 204 F.3d at 858, the ALJ did not rely solely on Dr. Lorber's testimony but evaluated Turpin's own testimony and other medical records including Dr. Stastny's opinion. A treating physician's opinion is not automatically controlling, Bentley, 52 F.3d at 785–86, and may be discredited when other medical opinions are supported by better medical evidence or when the physician gives inconsistent opinions, Prosch, 201 F.3d at 1013. The ALJ therefore did not err in giving Dr. Stastny's opinion less weight where it conflicted with medical records, Dr. Lorber's testimony, and Turpin's account of her daily activities. The ALJ considered Turpin's medical records and testimony, including materials from her treating physicians, as well as the testimony of the medical expert and vocational expert.

The ALJ discredited Turpin's testimony because it was inconsistent with the medical record and with Turpin's description of her daily activities. See Clark, 75 F.3d at 417. The ALJ noted that Turpin's medical records showed that she had been improving prior to June 30 and by late July she was doing well without medication. Dr. Chaplick did not recommend further treatment and although Turpin reported pain to Dr. Stastny in September, she did not then seek additional treatment. See Edwards, 314 F.3d at 967. ALJs are "in a better position to evaluate credibility," and we defer to the ALJ's decision to discount Turpin's testimony because it was supported by "good reasons and substantial evidence." Cox, 471 F.3d at 907.

Furthermore the ALJ's decision not to list lumbar radiculopathy, chronic bronchitis, or depression as severe impairments was supported by substantial evidence. Dr. Lorber testified that Dr. Chaplick's diagnosis of lumbar radiculopathy

was not supported by the evidence, and there was no evidence that Turpin had chronic bronchitis or that Turpin's depression was disabling in 2005. See Estes, 275 F.3d at 725. Even if Turpin was disabled on June 30, 2005, there was substantial evidence that she could not meet the duration requirement that the disability lasted or was expected to last for twelve months. See 42 U.S.C. § 416(i)(1)(A). Although the record indicates that Turpin's health worsened in subsequent years, this does not demonstrate disability during the time period relevant to her claim.

Accordingly, we reverse the judgment of the district court, and affirm the Commissioner's final decision to deny Turpin's application for disability benefits.

_____