# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-2416

_____

| | |
|---|---|
| Barbara Jones, on behalf of <br> David R. Morris, deceased, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> Jo Anne B. Barnhart, <br><br> Defendant-Appellee. | * <br> * <br> * <br> *   Appeal from the United States <br> *   District Court for the <br> *   Western District of Missouri. <br> * <br> * <br> * <br> * |

_____

Submitted: November 6, 2002
Filed: January 10, 2003

_____

Before McMILLIAN, MURPHY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Barbara Jones appeals from the judgment of the district court[1] upholding the decision of the Commissioner of the Social Security Administration (SSA) which denied her deceased husband's application for disability insurance benefits and supplementary security income benefits. We affirm.

_____

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, presiding.

I.

David R. Morris, now deceased, was born in 1952. He had a tenth grade education and worked in various semi-skilled and unskilled jobs. On November 10, 1997, he applied for disability insurance benefits and supplementary security income under Titles II and XVI of the Social Security Act (the Act). Morris complained that he had been unable to work since February 2, 1997, due to symptoms related to heart problems, including shortness of breath, dizziness, chest pains, and a reduced capacity for aerobic activity. He also reported leg pain and impairment, headaches, back pain, lightheadedness or fainting, and blurred vision.

Morris went to the Truman Medical Center-West (TMC) several times and was treated and discharged each time, except in February 1997 when he was admitted for hospitalization. During the course of this hospitalization Morris was examined by cardiologists. He was discharged on March 10, 1997, with a final diagnosis of alcoholic cardiomyopathy, congestive heart failure, left ventricle thrombus, hypertension, possible pneumonia, alcohol abuse, and alcohol withdrawal. Morris was prescribed medication and seen and treated regularly by TMC physicians through the hospital's various outpatient clinics. He missed two clinic appointments in June and July 1997.

Morris continued to work after the onset of his symptoms. He was laid off from his job as a dish washer at a casino in February 1997, but managed to find various general labor jobs through an employment agency. In August 1997, he began working temporarily as a rotary machine operator, but was not hired for a permanent job at the end of a 90 day probationary period because he was unable to pass the required physical exam.

After his claim was denied initially and on reconsideration, Morris requested a hearing before an administrative law judge (ALJ). A full hearing was held on

August 21, 1998, at which Morris appeared and testified; he was represented by an advocate who was not an attorney. Morris did not submit any report from his physicians discussing how his physical condition could be expected to impact his functional abilities, but he testified that his physicians had limited his activities to lifting no more than ten pounds. The Commissioner submitted a residual functional capacity assessment prepared by physicians in the state disability determination section who had reviewed Morris' medical records. They concluded that he was able to lift twenty pounds occasionally, but no more than ten pounds frequently; that he could stand and/or walk up to six hours in an eight hour workday; that he could sit with normal breaks for about six hours; that his ability to push and pull was not limited; that he had no manipulative, visual, or communication limitations; and that he had some postural and environmental limitations. In addition, a vocational expert testified as to Morris' employment opportunities and capabilities.

The ALJ denied Morris' application, finding that he was not disabled within the meaning of the Act. In reaching this decision, the ALJ employed the five step sequential analysis prescribed by SSA regulations, see 20 C.F.R. §§ 404.1520, 416.920 (2002); see also Bowen v. Yuckert, 482 U.S. 137, 140–41 (1987) (describing the five step process). In step one the ALJ determined that Morris met the disability insured status requirement and had not been engaged in substantial gainful activity since the onset of his condition. He found at step two that Morris had a severe impairment of cardiomyopathy, but that it did not meet or equal one of the impairments listed in the regulations as being so severe as to require an immediate finding of disability (step three), see 20 C.F.R. pt. 404, subpt. P, app. 1 (listing such impairments). The ALJ assessed Morris' residual functional capacity (RFC) and determined that it showed that he could no longer perform his past relevant work (step four), but that there were jobs existing in significant numbers in the national economy that Morris had the ability to perform (step five).

The ALJ's conclusion in step five was based on the testimony of the vocational expert who had been asked in a hypothetical question whether jobs were available for

an individual of Morris' age, education, and vocational profile who suffered from the same symptoms and limitations as he. The expert responded that there were a significant number of such jobs available in the economy which Morris could perform. The ALJ concluded that Morris was not disabled under the Act and denied his application.

Before dying from his heart condition, Morris asked the Appeals Council to review the decision, and his wife, Barbara Jones, was later substituted as named plaintiff. The Appeals Council denied the request for review. The ALJ's decision thus became the final decision of the Commissioner. Jones then brought this action in the district court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and the district court decided in favor of the Commissioner. Jones appealed.

Jones argues on appeal that the ALJ erred in concluding that Morris had not been disabled. She contends that Morris' condition met or equaled a listed impairment, that the ALJ violated SSA Ruling 96-6p by not providing for a further medical examination of Morris, that the ALJ incorrectly relied on the vocational expert to determine that there were a significant number of jobs available to Morris in the economy, and that the ALJ improperly relied on rule 201.19 of the medical-vocational guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, to determine that Morris was not disabled. She also contends that the Supreme Court decision in Barnhart v. Walton, 122 S. Ct. 1265 (2002), shows that a claimant who has an impairment expected to result in death need not demonstrate an inability to engage in substantial gainful activity to be considered disabled under the Act.

II.

We review de novo a district court's decision affirming the denial of social security benefits. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). In conducting this review, we must "determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole." Davis v. Apfel, 239 F.3d

962, 966 (8th Cir. 2001). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). To determine whether the evidence is substantial, "we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." Id. We are not permitted to reverse "merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently." Davis, 239 F.3d at 966.

Jones first contends that her husband's condition met or equaled the listing for cardiomyopathy in § 4.08 of the listings, when evaluated under § 4.02, see 20 C.F.R. pt. 404, subpt. P, app.1, §§ 4.02, 4.08. The ALJ concluded that Morris' case did not fall within the listed cardiac impairments partly because the listings require that the debilitating symptoms occur while on "a regimen of prescribed treatment" and be evidenced by certain types of medical tests, such as an exercise test. Id. § 4.02. The conclusion that the symptoms did not occur while on a "regimen of prescribed treatment" is supported by the evidence that his condition improved after Morris received treatment in March 1997. For example, on April 2, 1997 Morris reported to his doctors that he was "doing fine" in terms of shortness of breath and chest pain, and on August 7, 1997 he denied experiencing any chest pain, shortness of breath, or palpitations. In addition, Jones has not contended that Morris underwent the type of tests required to meet the cardiac listings. Moreover, the record shows that a consulting doctor from the Missouri agency responsible for disability determinations concluded that Morris' condition did not "meet any cardiac listing" and was not the equivalent of a listed impairment.[2] The determination by a physician from such a

---

[2]While the consulting physician did not explicitly state that Morris' condition was not equivalent to a listing, she did state that he needed to have an RFC evaluation. If his condition had met the equivalency requirement, there would have been no need to measure his RFC. That procedure is only required when the claimant's condition is determined in step three not to meet or equal a listed impairment. See 20 C.F.R. § 404.1520(e).

state agency is to be treated by an ALJ as "expert opinion evidence" and given "appropriate weight."  SSR 96-6p, [2002 Supplementary Pamphlet] Soc. Security Reporting Service: Rulings (West) at 129, 131 (July 2, 1996).  Although Jones has pointed out that the record indicates that Morris was taking multiple heart medications and suffered from symptoms associated with heart disease, she has not directed our attention to any medical opinion that states that Morris' condition met or equaled a listed impairment.  We thus conclude that the ALJ's determination that Morris' condition did not meet or equal a listed impairment was supported by substantial evidence.

Jones also argues that the ALJ violated SSA Ruling 96-6p at step three by not producing medical opinion evidence on the issue of whether Morris' condition was the equivalent of a listed impairment.  In support of her argument, Jones quotes only the third sentence from the following paragraph of the ruling:

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled.  As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments.  *However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.*

SSR 96-6p, [2002 Supplementary Pamphlet] Soc. Security Reporting Service: Rulings (West) at 131 (emphasis added).  Jones' reliance on the language in the third sentence is misplaced.

When the paragraph is read as a whole and in full context, it is apparent that it does not require the ALJ to provide a new medical evaluation for a claimant whenever a state medical or psychological consultant has addressed the issue of equivalency. Instead, the ruling requires the ALJ to accept findings made by a physician "designated by the Commissioner" as expert opinion evidence. 20 C.F.R. §§ 404.1526(c), 416.926(c) (providing that a state medical consultant is considered a physician "designated by the Commissioner"). Indeed, "the requirement to receive expert opinion evidence into the record" on the issue of equivalence "may be satisfied by [various types of] documents signed by a State agency medical or psychological consultant." SSR 96-6p, [2002 Supplementary Pamphlet] Soc. Security Reporting Service: Rulings (West) at 131. It is true that another part of 96-6p directs the ALJ to "obtain an updated medical opinion from a medical expert," but that directive only applies to certain conditions which Jones has not alleged here. Id. at 132. In this case, the ALJ satisfied the requirements of 96-6p by receiving into evidence the opinion of a state physician addressing the issue of whether Morris' condition was equivalent to any listed impairment.

Jones also argues that the ALJ erred in step five of the disability analysis by finding that there were a significant number of jobs available for Morris and that he was therefore not disabled within the meaning of the Act. Jones contends that the vocational expert's testimony that Morris was qualified to be an information clerk, telephone solicitor, or surveillance system monitor[3] conflicted with the Dictionary of Occupational Titles (DOT). She asserts that those jobs, as described in the DOT, required a higher skill level (SVP) than Morris had and that he was only capable of unskilled work.

_____

[3]We note that the ALJ described this job to be a *security* system monitor, a job title which does not appear in the Dictionary of Occupational Titles. We conclude that the ALJ was referring to the job of *surveillance* system monitor (DOT 379.367-010) because that is the title used by the vocational expert in her testimony in the record.

While an ALJ cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications, see Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997), we see no conflict in this case. The DOT indicates that a surveillance system monitor position requires an SVP of 2, which makes it an unskilled position under SSA rulings, see SSR 00-4p, [2002 Supplementary Pamphlet] Soc. Security Reporting Service: Rulings (West) at 242, 245 (Dec. 4, 2000). The vocational expert testified that there were approximately 75,000 such jobs nationwide. Cf. Weiler v. Apfel, 179 F.3d 1107, 1110–11 (8th Cir. 1999) (affirming ALJ's "not-disabled" determination where evidence supported one available occupation offering a significant number of jobs). Moreover, the record indicates that Morris could perform the other two jobs identified by the vocational expert even though the DOT lists them as requiring an SVP of three or four. Morris' work history indicated that he had worked at jobs with equally high SVP ratings and had even written reports at one job. We conclude that there is substantial evidence supporting the ALJ's determination that there were a significant number of jobs in the economy that Morris could perform.

Jones further contends that the ALJ relied on rule 201.19 of the medical-vocational guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, to determine that Morris was not disabled and that his reliance was not supported by the evidence. Rule 201.19 directs an ALJ to conclude that a claimant with abilities similar to Morris is not disabled if he can perform a full range of sedentary work. See id. In discussing the evidence and his decisionmaking process, the ALJ stated that rule 201.19 would require a finding of not disabled only "[i]f claimant were capable of performing a full range of sedentary work." The ALJ then found that "claimant cannot perform a full range of sedentary work" and proceeded to consider whether there were jobs available to Morris in the economy. It is thus clear that the ALJ did not rely on rule 201.19 in determining that Morris was not disabled. Had he relied on that rule, it would have been unnecessary to undertake the additional process of determining the availability of jobs in the national economy. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b). Moreover, there was substantial evidence to support the conclusion that there was a

significant number of jobs in the economy available to Morris. We thus cannot conclude that the ALJ committed error by relying on rule 201.19 to find Morris not disabled.

Jones also contends that <u>Barnhart v. Walton</u>, 122 S. Ct. 1265 (2002), shows that it was improper to determine that Morris was not disabled. Her argument on this point is unclear, but she suggests that the statement in <u>Walton</u> that the statutory definition of disability uses "parallel phrasing," <u>id.</u> at 1270, indicates a person may be found disabled if he either is unable "'to engage in any substantial gainful activity'" or has a "'physical or mental impairment which can be expected to result in death,'" <u>id.</u> at 1268 (quoting the definition of disability under both Title II, 42 U.S.C. § 423(d)(1)(A), and Title XVI, 42 U.S.C. § 1382c(a)(3)(A), of the Act[4]). Because Morris subsequently died from the ailments causing his impairment, Jones concludes that his impairment must have been expected to result in death and that he therefore should have been deemed disabled. This argument is without merit. <u>Walton</u> held only that the SSA had permissibly interpreted §§ 423(d)(1)(A) and 1382c(a)(3)(A) to mean that "the 'inability' (to engage in any substantial gainful activity) must last, or must be expected to last, for *at least 12 months*" and that "the term 'expected to last'" is "applicable only when the 'inability' has *not yet* lasted 12 months." <u>Id.</u> <u>Walton</u> did not deviate from the principle that disability under the Act requires that a person must have both an inability to engage in any substantial gainful employment and an impairment meeting the statutory requirements. <u>See</u> <u>id.</u> at 1269 (definition

---

[4]Sections 423(d)(1)(A) and 1382c(a)(3)(A) define the term "disability" as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2000).

"requires a certain kind of 'inability'" and "it requires an 'impairment'"). The ALJ could properly determine that even though Morris had a severe impairment, he did not meet the Act's requirements for disability status because he did not have an inability "to engage in any substantial gainful activity." §§ 423(d)(1)(A), 1382c(a)(3)(A).

For these reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.