# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3337

_____

Veales Davidson,                              *
                                              *
              Appellant,                      *
                                              *    Appeal from the United States
        v.                                    *    District Court for the
                                              *    Eastern District of Arkansas.
Michael J. Astrue, Commissioner of            *
Social Security Administration,               *
                                              *
              Appellee.                       *

_____

Submitted: April 16, 2009
    Filed: August 27, 2009

_____

Before LOKEN, Chief Judge, HANSEN and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Veales Davidson appeals the judgment of the district court[*] upholding the Social Security Commissioner's decision to deny his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383f. We affirm.

---

[*]The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the District of Eastern District of Arkansas, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

Veales Davidson was born in 1961. He completed the ninth grade and obtained a general education diploma. From 1979 to 1991, he worked in seasonal agricultural jobs, and in 1993, he worked as a janitor operating a fork lift in a factory. In 1997, the last year he was employed, he worked briefly assembling electrical conduits on an assembly line and shoveling rice at a rice mill. Since 1995, he has been treated for major depression and hospitalized in mental health care facilities on several occasions. Since 2004, he has suffered from chronic hepatitis C, a viral disease that causes inflammation of the liver. He also has a history of drug and alcohol abuse ending around 1999.

In February 2000, Davidson filed an application for SSI under Title XVI of the Social Security Act, alleging disability since December 1997. The Social Security Administration ("SSA") denied his application initially and upon reconsideration. Davidson then requested and received an administrative hearing before an administrative law judge ("ALJ"), who denied the application on the ground that Davidson was not "disabled" within the meaning of the Social Security Act. *See id.* § 1382c(a)(1)(3)(A), (B). Davidson sought review of that decision by the SSA's Appeals Council. The Appeals Council vacated the ALJ's decision and remanded the case for further evaluation of Davidson's depression. In August 2003, following a second hearing, the ALJ denied Davidson's application, and the Appeals Council denied Davidson's request for review.

In April 2004, Davidson brought a civil action in district court. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner filed a motion to remand the case for further development of the record, including evaluation by an ALJ of additional evidence submitted to the Appeals Council. The district court granted the Commissioner's motion and dismissed the case without prejudice. In December 2006, following a third hearing, the ALJ denied Davidson's application once again.

The ALJ used the familiar five-step sequential evaluation process to determine whether Davidson was disabled.  *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  At steps one through three, the ALJ found that Davidson had not performed substantial gainful activity since December 1997; that he suffered from several severe impairments, including chronic hepatitis C, recurrent major depression, and a remote history of drug and alcohol abuse; and that his impairments did not meet or equal an impairment listed in the regulations.  At step four, the ALJ found that Davidson was unable to perform his past relevant work as a janitor operating a forklift, but that he retained the residual functional capacity ("RFC") to perform unskilled light work with certain restrictions.  In assessing Davidson's physical limitations, the ALJ did not give significant weight to the opinions of two of Davidson's treating physicians – Dr. Michael D. Hightower, a gastroenterologist who treated Davidson's hepatitis C, and Dr. Mark Hahn, a physician at a family practice clinic who saw Davidson periodically and monitored his overall physical and mental condition.  The ALJ relied on the opinion of a designated medical expert, Dr. John Murray, who reviewed the medical evidence and concluded that Davidson had no functional limitations for basic work-related activities resulting from his chronic hepatitis, and that he could perform light exertional work from July 2004 through February 2006.

At step five, after considering Davidson's age, education, work experience, and RFC, the ALJ found that there was a significant number of jobs in the national economy that Davidson could perform, including work as a cleaner, entry-level assembler, or hand or machine packager.  This finding was based on the testimony of a vocational expert who responded to a hypothetical question posed by the ALJ.  Because the ability to perform jobs in the national economy precludes a finding of disability, 20 C.F.R. § 416.920(g)(1), the ALJ concluded that Davidson was not entitled to SSI payments.

The Appeals Council denied review of the ALJ's decision, resulting in a final decision of the Commissioner. *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008). Davidson again brought suit in the district court, and in September 2006, the court upheld the Commissioner's decision. Davidson appeals.

## II.

We review *de novo* a district court's decision affirming the denial of social security benefits. *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007). We will affirm if the Commissioner's decision is "supported by substantial evidence on the record as a whole." *Id.*; *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). We consider both evidence that supports and evidence that detracts from the Commissioner's decision. *England*, 490 F.3d at 1019. If substantial evidence supports the decision, we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we would have decided the case differently. *Id.*

Davidson contends that the ALJ's step-five determination that Davidson is not disabled is not supported by substantial evidence on the record as a whole. In particular, Davidson contends that the ALJ committed two errors that require reversal, each of which we address in turn.

## A.

Davidson first argues that the ALJ improperly disregarded the opinions of two of his treating physicians, Dr. Hightower and Dr. Hahn, when assessing his physical RFC. Dr. Hightower, a gastroenterologist, treated Davidson for hepatitis C from May 2004 to November 2006, administering two rounds of injections of Interferon, a

common drug to reduce the hepatitis virus. Dr. Hahn, a family physician, saw Davidson periodically at a family practice clinic from June 2003 to December 2005, monitoring his overall mental and physical condition, but generally deferring to Dr. Hightower regarding the hepatitis treatment.

Under the SSA's regulations, an ALJ must give a treating physician's medical opinion controlling weight if it is well supported by medically acceptable diagnostic testing and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). If the opinion fails to meet these criteria, however, the ALJ need not accept it. *Hacker*, 459 F.3d at 937. "[W]hile entitled to special weight, a treating physician's opinion does not automatically control, particularly if the treating physician evidence is itself inconsistent." *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) (internal quotation omitted). Moreover, a treating physician's opinion that a claimant is "disabled" or "unable to work," does not carry "any special significance," 20 C.F.R. § 416.927(e)(1), (3), because it invades the province of the Commissioner to make the ultimate determination of disability. *House*, 500 F.3d at 745.

The opinions at issue are embodied in two letters addressed "To Whom it May Concern," the first written by Dr. Hightower on October 11, 2005, and the second written by Dr. Hahn on December 5, 2005. Dr. Hightower's letter states:

> Mr. Davidson is a 44 year old white male that I am following and treating for chronic Hepatitis C. Mr. Davidson has early cirrhosis on liver biopsy. He continues on interferon therapy to help halt progression of the fibrosis and scarring. He remains symptomatic with marked fatigue, joint aches and pains. We are continuing him on pegylated interferon therapy. At this time I don't think he is able to sustain gainful employment. He continues to need very close, careful follow-up in the clinic.

Dr. Hahn's letter states, in pertinent part:

> Mr. Davidson is a 43 year old male that we are currently seeing at the AHEC [Area Health Education Center] Clinic for chronic Hepatitis C. He remains symptomatic with marked fatigue, joint aches and pains. We do not believe that he is currently able to sustain gainful employment as he continues to need close follow up appointments in this clinic as well as others. Your concern in this matter is very much appreciated.

The ALJ did not give significant weight to either opinion. After noting the "common language" between the two letters, the ALJ determined that Dr. Hightower's opinion was inconsistent with his own treatment records, and that Dr. Hahn appeared to rely on Dr. Hightower's assessment as opposed to his own objective findings. We conclude that substantial evidence supports the ALJ's refusal to give these opinions controlling weight.

It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes. *Juszczyk v. Astrue*, 542 F.3d 626, 632-33 (8th Cir. 2008); *House*, 500 F.3d at 744. Dr. Hightower's letter of October 11, 2005, states that Davidson "remains symptomatic with marked fatigue, joint aches and pains," and that he cannot sustain gainful employment. But Dr. Hightower's treatment notes from the same day indicate that Davidson was having "*mild* joint aches and pains," and that "overall, he [was] doing fairly well." A.R. 655 (emphasis added). Dr. Hightower's other treatment notes, recorded from May 2004 to November 2006, contain few indications of the total disability that Dr. Hightower attributed to Davidson in the October 11, 2005 letter. Instead, they suggest that Davidson tolerated the Interferon treatments fairly well, that he experienced side effects, and that once his side effects became too severe, the treatments were terminated.

For example, in September 2005, about a month before the "To whom it may concern letter" was written, Dr. Hightower noted that Davidson "has tolerated the interferon very well," and that he has "no bad side effects at this time." In November 2005, about a month after the letter was written, Dr. Hightower noted that Davidson "has had a good month since we last saw him," and that although he is "having some mild headaches, and aches and pains," "overall, [he] seems to be tolerating this round of treatment better than the last round." In January 2006, Dr. Hightower indicated that Davidson is "having a bit more problem [sic] with headaches, fatigue, and nausea," and discontinued the Interferon treatments as a consequence. By February 2006, however, Dr. Hightower wrote, "he seems to be stable, and doing fairly well," and "[o]verall, he is feeling much better." Similarly, in April 2006, Dr. Hightower wrote that Davidson is "feeling better and better since discontinuing his Interferon." Thus, although Davidson experienced side effects from the Interferon treatment, the general tenor of Dr. Hightower's treatment notes is in tension with the assessment in the letter of October 11, 2005, that Davidson cannot sustain gainful employment. The ALJ's decision to discount the opinion of Dr. Hightower is supported by substantial evidence.

The ALJ's decision to discredit Dr. Hahn's opinion is also supported by substantial evidence, because Dr. Hahn's opinion is itself inconsistent. Dr. Hahn's letter of December 5, 2005, states that Davidson "remains symptomatic with marked fatigue, joint aches and pains," and that he "continues to need close follow up appointments." But Dr. Hahn's treatment notes from a clinic visit that same day contain no reference to fatigue, aches, or pains – or anything related to that type of discomfort. Indeed, the comments regarding Davidson's "musculoskeletal" condition state that his "gait and station" is "normal," and that he can "participate in [an] exercise program." Dr. Hahn's other treatment notes, recorded from June 2003 to December 2005, reveal few hints of the complete disability described in the letter of December 11, 2005. To be sure, they indicate that Davidson experienced side effects from the Interferon therapy, including nausea, fatigue, joint pain, difficulty sleeping,

and depression. But they also show that Davidson often denied experiencing those side effects, stating on several visits that he had no depression, and noting on other occasions that he had no joint pain, nausea, or difficulty sleeping. Accordingly, there is substantial evidence contrary to Dr. Hahn's opinion of December 5, 2005, and the ALJ acted permissibly in declining to give Dr. Hahn's assessment controlling weight.

Beyond the problem of inconsistencies, the letters from Dr. Hightower and Dr. Hahn suffer from another weakness. Each letter sets forth a conclusory opinion on the ultimate determination of disability, without supporting objective evidence indicating how Davidson's impairments interfere with the performance of job-related functions. "Though a treating doctor's opinion that the claimant cannot return to work, combined with other medical information, may assist an ALJ [in] determining whether a claimant is disabled, such an opinion cannot resolve the issue." *Samons v. Astrue*, 497 F.3d 813, 819 (8th Cir. 2007) (internal citation omitted). Here, both letters vaguely state that Davidson "remains symptomatic with marked fatigue, joint aches and pains" and needs careful follow-up, and Dr. Hightower's letter adds that Davidson remains on Interferon therapy. But neither letter explains, with citations to medical tests or diagnostic data, why or how Davidson's hepatitis C or the Interferon therapy prevents him from carrying out work-related tasks. *See id.* at 819; *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995); *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995). Conclusory opinions such as these do not compel a finding of disability, and thus the ALJ acted within an acceptable zone of choice in declining to give them controlling weight.

B.

Davidson next argues that the mental RFC determined by the ALJ was not supported by substantial evidence, because it did not account for the extent of his mental limitations. "The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians

and others, and an individual's own description of his limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006); *see* 20 C.F.R. § 416.945. In this case, the ALJ recognized that Davidson had a long history of treatment for recurrent major depression, including some reported psychotic symptoms, several in-patient admissions to the hospital, and depression as a side effect of the Interferon therapy. Accordingly, the ALJ determined that he retained the mental RFC to perform only simple work with few variables, where interpersonal contact was incidental to the tasks performed, and where supervision could be simple, direct, and concrete.

Davidson argues that the ALJ's RFC finding should have included additional mental limitations based on his depression. He says that the ALJ improperly ignored the opinions of his treating mental health professionals regarding the severity of his depression.

The ALJ's formulation of Davidson's mental RFC was adequately supported by the record. The ALJ determined that Davidson's depressive disorder was not disabling, and substantial evidence supports that conclusion. There was substantial evidence of record that Davidson was malingering during psychological examinations, that all of the functional assessments of his mental condition indicated no more than moderate work-related limitations, and that his depression was controllable with medication.

"[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malinger or was exaggerating symptoms for financial gain." *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003); *see Clay v. Barnhart*, 417 F.3d 922, 926, 930 & n.2 (8th Cir. 2005). Davidson displayed malingering behavior during three consultative psychological examinations conducted at the request of the Commissioner.

During the first examination, performed in June 2001, Dr. Richard C. Maddock concluded that Davidson displayed malingering behavior on four cognitive tests – the Computerized Assessment of Response Bias ("CARB") test, the Minnesota Multiphasic Personality Inventory ("MMPI") test, the Wahler Physical Symptoms Inventory ("WPSI"), and the Wechsler Adult Intelligence Scales test. In fact, Dr. Maddock noted that Davidson's performance on the CARB test, which earned him a score of "extreme" malingering, was "so poor that normally a person can only do this poorly by deliberately deciding to not perform." He further reported that malingering results like Davidson's occurred "by chance alone less than 1% of the time." On the MMPI test, Dr. Maddock stated that Davidson "grossly exaggerated problems in an effort to present the impression of severe emotional disturbance," and that there was "only a remote possibility that excessive reporting of symptoms [was] related to a condition of intense distress." Ultimately, because of Davidson's malingering, Dr. Maddock was completely unable to assess Davidson's ability to perform work-related activities.

Dr. Maddock examined Davidson a second time in August 2002, again concluding that he was malingering on several tests, and again noting that such behavior hampered the assessment of his functional abilities. Specifically, Dr. Maddock determined that Davidson malingered on the CARB test, albeit less so than he had during the first examination, and that he malingered on the MMPI and WPSI tests as well. Dr. Maddock concluded that although Davidson had "limited the amount and type of malingering [from the previous examination]. . . malingering is still malingering," and it was "very hard" to assess Davidson's ability to perform work-related activities.

In August 2005, Davidson displayed malingering behavior a third time during a psychological evaluation conducted by Dr. Stephen R. Harris. Like Dr. Maddock, Dr. Harris concluded that Davidson displayed a "very poor effort" on the CARB test, and that his performance was "indicative of individuals who are exaggerating the

extent of their clinical and cognitive difficulties." Davidson responds that Dr. Harris detected symptom exaggeration only on the CARB test, and that he did not use the term "malingering." He also points out that Dr. Hope Gilchrist, a psychologist who examined his mental status in April 2000, did not find evidence of malingering or exaggeration. While true, Davidson's rebuttal does not change the fact that Dr. Harris's finding constituted the third reported instance in which Davidson exaggerated his symptoms in an effort to portray himself as disabled. Under these circumstances, the ALJ properly discredited Davidson's allegations of disabling depression.

Even if we were to accept Davidson's assertion of mental impairment, moreover, none of Davidson's treating or consulting mental health doctors concluded that he had any significant work-related limitations. In fact, all three functional assessments of Davidson's mental impairments indicated no more than moderate work-related limitations. The first assessment, conducted by Dr. Kathryn M. Gale and Dr. Brad Williams in April 2000, found that Davidson was "not significantly limited" in fourteen categories and "moderately limited" in six categories. The second assessment, performed by Dr. Maddock in August 2002, concluded that Davidson displayed no limitations in seven categories on the checklist, slight limitations in one, and moderate limitations in two – with no indications of "marked" or "extreme" restrictions. Finally, Dr. Harris's assessment, dated August 2005, revealed that Davidson had slight restrictions in three categories, moderate limitations in six, and slight limitations in three – again with no indications of marked or extreme restrictions.

Finally, there is substantial evidence that Davidson's depression was controllable with medication. In April 2004, Davidson was observed with a "semi-brighter affect" and "more relaxed manner" after two weeks of taking Wellbutrin. In September 2004, Davidson told Dr. Ali Hashmi that the "current medication regimen [was] working well for his depression," and in August 2005, Davidson reported to Dr. Robert VanScoy that although he still had feelings of

depression, the Cymbalta had been "very helpful," and he "fe[lt] much better than he did before." Similarly, in November 2005, Davidson told a nurse that he was "doing fairly well on the medications," and that they were "working for him." And in June 2006, Davidson told a clinician that although he felt "real depressed" before, he "fel[t] a lot better" after his medication was adjusted.

Impairments that are controllable or amenable to treatment do not support a finding of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). On balance, although Davidson's symptoms of depression sometimes worsened and required adjustments in his medication, the ALJ's determination that Davidson's depression was generally controllable is supported by substantial evidence. *See Charles v. Barnhart*, 375 F.3d 777, 784 (8th Cir. 2004); *Harvey v. Barnhart*, 368 F.3d 1013, 1015 (8th Cir. 2004).

For the foregoing reasons, the record adequately supports the ALJ's conclusion regarding Davidson's residual functional capacity. The judgment of the district court is affirmed.

_____