# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1123

_____

Justan Carlson,

               Appellant,

v.

Michael J. Astrue, Commissioner of
Social Security,

               Appellee.

* * * * * * * * * * * *

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: October 22, 2009
Filed: May 10, 2010

_____

Before COLLOTON and BENTON, Circuit Judges, and PIERSOL,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Justan Carlson appeals the judgment of the district court[2] upholding the Commissioner of Social Security's denial of Carlson's application for supplemental security income. We affirm.

_____

[1] The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

[2] The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

I.

Justan Carlson applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income under Title XVI of that Act, *id.* § 1382, claiming a disability onset date of March 20, 2004. Carlson's disability claims were based on his low body weight and diabetes with neuropathy in his feet.

Carlson has had diabetes mellitus since he was seventeen years old. He was twice admitted to the hospital with diabetic ketoacidosis. During the first hospitalization on May 17, 2003, doctors assessed Carlson as having diabetic ketoacidosis, dehydration, and protracted nausea and vomiting. Approximately nine months later, on February 10, 2004, Carlson was again admitted to the hospital with nausea and vomiting. Carlson was diagnosed with "[d]iabetic ketoacidosis with a mixed metabolic acidosis and a metabolic alkalosis from vomiting." (A.R. 168).

Carlson's medical records also track his low body weight. These records show that Carlson's weight was 134 pounds on April 19, 2004, fell to as low as 123.8 and 123.4 pounds in September and October 2004, respectively, and increased to 136 pounds and 141 pounds in June and July 2005, respectively.

The Social Security Administration ("SSA") denied Carlson's claims after initial review. After Carlson sought reconsideration, Dr. Lawrence Staples, a state agency medical consultant, reviewed Carlson's case. Dr. Staples considered whether Carlson met Listing 5.08,[3] weight loss due to any persisting gastrointestinal disorder, and Listing 9.08, diabetes mellitus. He determined that Carlson did not meet either listing. After this review, the SSA denied Carlson's claims again.

---

[3]We refer to Listing 5.08 before its recent amendment, effective December 18, 2007. *See* Revised Medical Criteria for Evaluating Digestive Disorders, 72 Fed. Reg. 59,398 (Oct. 19, 2007).

Carlson then filed a request for hearing by an administrative law judge ("ALJ"). After a hearing at which Carlson was represented by counsel, the ALJ determined that Carlson was not entitled to disability insurance benefits or supplemental security income because he was not disabled. With respect to disability insurance benefits, the ALJ concluded alternatively that Carlson was ineligible because he was no longer insured under Title II of the Social Security Act as of his alleged disability onset date. The Appeals Council denied Carlson's request for review, thus making the ALJ's opinion the final decision of the Commissioner.

In determining that Carlson was not disabled, the ALJ used the familiar five-step disability evaluation process outlined in 20 C.F.R. § 416.920. *See, e.g.*, *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004). At steps one and two, the ALJ concluded that Carlson had not engaged in substantial gainful activity since the alleged disability onset date, and that Carlson's diabetes mellitus, peripheral neuropathy, and lower extremity pain were severe impairments. At step three, the ALJ determined that Carlson's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Like Dr. Staples, the ALJ explicitly considered Listing 5.08 and Listing 9.08, and concluded that Carlson did not meet or equal those two listings.

After considering Carlson's residual functional capacity ("RFC") at step four, the ALJ found that it was feasible for Carlson to perform his past job as a telephone solicitor. Finally, at step five, the ALJ found that Carlson could perform jobs that exist in significant numbers in the national economy. Based on these conclusions, the ALJ ultimately determined that Carlson was not disabled.

The district court upheld the ALJ's decision. Carlson now appeals only the denial of his claim for supplemental security income, arguing that the record does not support the ALJ's conclusion that he was not disabled.

We review the district court's decision *de novo*, and "will affirm if the Commissioner's decision is supported by substantial evidence on the record as a whole." *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009) (internal quotation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). When determining whether substantial evidence exists, we consider evidence that supports the Commissioner's conclusion, along with evidence that detracts from that conclusion. *Id.* To the extent that Carlson also challenges the ALJ's legal conclusions, we review those determinations *de novo*. *See Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003).

Carlson first argues that the ALJ's decision has no medical support in the record, because no agency medical expert explicitly determined that Carlson's impairments did not equal a listed impairment as required by SSA policy. The determination of whether a claimant meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is made at step three of the disability determination process. 20 C.F.R. § 416.920(a)(4)(iii). During this step, the ALJ has the responsibility to decide whether "medical equivalence" has been established. *Id*. § 416.926(e). An impairment is medically equivalent under the regulations if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id*. § 416.926(a). If the ALJ finds that a claimant has an impairment that meets or equals one of the listings, then the claimant will be found disabled. *Id.* § 416.920(a)(4)(iii).

Here, Carlson argues that SSA policy also requires the ALJ to receive expert evidence on the issue of equivalence. Carlson cites Social Security Ruling 96-6p, which notes that "longstanding policy requires that the judgment of a physician . . .

designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight." Social Security Ruling ("SSR") 96-6p, 61 Fed. Reg. 34,466, 1996 WL 374180 (July 2, 1996). The policy also states that when an ALJ determines that equivalency is not established, the requirement to receive expert opinion evidence into the record may be satisfied by a Disability Determination and Transmittal form or other document that reflects the findings of the consultant and is signed by the consultant. *Id*.

We conclude that the ALJ fulfilled the requirement established by SSR 96-6p. In *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974 (8th Cir. 2003), we concluded that an agency physician necessarily gave the requisite opinion on medical equivalence, albeit not explicitly, where the physician stated that an evaluation of residual functional capacity was required. Because no assessment of RFC would have been necessary if the physician had found that the claimant's condition was equivalent to a listed impairment, we reasoned that the physician implicitly rejected a determination of equivalence. *Id*. at 978 n.2.

*Jones* compels rejection of Carlson's first argument, because Carlson's records contain a similar determination signed by a state medical consultant. The record shows that Dr. Staples served as a state medical consultant who evaluated Carlson. Like the physician in *Jones*, Dr. Staples concluded that an RFC assessment was necessary for Carlson, and thus implied that Carlson did not equal Listing 5.08. The ALJ's consideration of Dr. Staples's signed RFC assessment satisfied the obligation to receive an expert opinion on equivalence.

The ALJ's ultimate decision that Carlson did not meet or equal Listing 5.08 is supported by substantial evidence. The claimant has the burden of proving that his impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified

criteria." *Id.* Listing 5.08 covers "[w]eight loss due to any persisting gastrointestinal disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08. The introduction to Listing 5.08 clarifies that "[w]hen the primary disorder of the digestive tract has been established . . . the resultant interference with nutrition will be considered under the criteria in 5.08. This will apply whether the weight loss is due to primary or secondary disorders of malabsorption, malassimilation or obstruction." *Id.* § 5.00(B).

At Carlson's height of 74 inches, Listing 5.08 requires a weight less than or equal to 128 pounds, or a weight less than or equal to 136 pounds if the claimant has uncontrolled diabetes. *Id.* § 5.08. In this case, the ALJ concluded that Carlson failed to meet Listing 5.08. While the ALJ's opinion is unclear on the issue of the weight requirement, the ALJ found that Carlson did not meet the listing because "there has been no primary disorder of the digestive tract established, nor is there evidence of a secondary disorder . . . as required under 5.00B." (A.R. 20).

The record contains substantial evidence to support the ALJ's conclusion on this point. Dr. Staples found that Carlson failed to meet Listing 5.08 because there was no evidence that Carlson suffered from a gastrointestinal disorder. No other physician suggested that Carlson had such a disorder. Carlson consistently presented to doctors with a soft, nontender abdomen with normal bowel sounds. Consistent with these records, Carlson admitted during the administrative hearing that he had regular bowel movements, and that doctors did not know what caused his weight loss. Therefore, the record provides substantial evidence to support the ALJ's conclusion that Carlson does not have a gastrointestinal disorder and does not meet Listing 5.08.

The ALJ also did not err by determining that Carlson did not suffer from an impairment equal to Listing 5.08. To establish equivalency, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Therefore, to equal Listing 5.08, a claimant's low weight must be as severe as the listing requirement and

-6-

must be due to an impairment that is as severe as a gastrointestinal disorder. In this case, the ALJ found that equivalence was not established because "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (A.R. 20).

Carlson argues that his impairments equal Listing 5.08 in each of the three ways outlined by the governing regulations. *See* 20 C.F.R. § 416.926. Carlson contends that the first medical equivalence test applies because he is missing one of the findings for Listing 5.08, a gastrointestinal disorder, but that his diabetes is another finding related to weight loss that has equal medical significance. Similarly, under the third test for equivalence, Carlson claims that his weight loss and diabetes combine to be medically equivalent to Listing 5.08. Under the second equivalence test, Carlson asserts that if his weight loss is the result of an unknown process, this process can be considered an equivalent impairment not described in the listings, because Carlson's weight loss itself demonstrates the equal severity of the unknown impairment.

Two of these arguments are based on Carlson's assertion that diabetes is equivalent to a gastrointestinal disorder because it affects weight by influencing nutrition and digestion. To support this claim, Carlson points to two occurrences when he was hospitalized with nausea and vomiting as a result of his diabetes. The two hospitalizations, however, show that the weight loss was caused by diabetic ketoacidosis, which likely occurred because Carlson's diabetes was not under control. After those events, Carlson began to control his diabetes. It was reasonable for the ALJ to conclude that this control of the diabetes prevented future episodes of ketoacidosis with vomiting and nausea, and thereby limited the severity of the impairment.

The ALJ reasonably rejected Carlson's third argument on equivalence, because the record supports a conclusion that Carlson's weight loss was not caused by an unknown disorder as severe as a gastrointestinal disorder. Dr. Zachary Alexander

stated that Carlson "is unable to eat well due to financial concerns and [Carlson] states that he only has one good meal a day." (A.R. 262). Dr. Alexander also concluded that "[t]he most likely explanation is that [Carlson's] weight loss is due to poor controlled diabetes or nutritional deficit." (A.R. 263). On the record as a whole, therefore, substantial evidence supports the ALJ's conclusion that Carlson's impairments do not equal the severity of all the criteria in Listing 5.08.

Carlson next argues that remand is necessary on the issue of medical equivalence because the ALJ applied an incorrect legal standard. He contends that the ALJ erroneously required Carlson to show that he suffered from a gastrointestinal disorder instead of any equivalent impairment. Carlson's argument is based on the ALJ's statement that "in the absence of either a primary or secondary [digestive tract] disorder, [Listing 5.08] can not be met or equaled. That is a legal decision, [and Carlson's] request for a medical advisor is denied." (A.R. 20).

Although this statement in isolation seems in tension with the governing regulations, the opinion in its entirety demonstrates that the ALJ applied the correct legal standard to the question of medical equivalence. The ALJ's disputed statement appears below a heading declaring that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (A.R. 20). This statement reflects the correct legal standard, which provides that when determining medical equivalency, an impairment can be considered alone or in combination with other impairments. *See* 20 C.F.R. § 416.926. The heading also cites several relevant regulations, including the regulation governing equivalency, which tends to confirm that the ALJ recognized and applied the correct legal standard. Most significant, the ALJ applied the correct standard later in the opinion by considering whether Carlson met or equaled the two listings in question. Therefore, the record as a whole shows that the ALJ applied the correct legal standard to the issue of medical equivalence.

Carlson also contends that the ALJ erred by failing to obtain an updated opinion from a medical expert as required by SSA policy. Carlson's argument is again based on SSR 96-6p, which identifies two situations when an ALJ must consider updated medical evidence. *See* SSR 96-6p, 61 Fed. Reg. 34,466, 1996 WL 374180 (July 2, 1996). First, an updated medical opinion is needed "[w]hen no additional medical evidence is received, but in the opinion of the administrative law judge . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." *Id.* Second, an updated medical opinion is required if "additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Id.*

Carlson argues that both of these conditions were met, but we conclude that the ALJ's contrary conclusion is supported by substantial evidence. As discussed, substantial evidence supported the ALJ's conclusion that Carlson's low weight was caused by his previously uncontrolled diabetes or his inability to afford meals. Thus, the record supports the ALJ's conclusion that a finding of equivalence was "not reasonable," and that additional medical testimony was unnecessary. The ALJ also properly concluded that updated medical testimony would not have changed Dr. Staples's conclusion on equivalence. On this point, Carlson argues that Dr. Staples was unable to consider new evidence showing that Carlson's low weight persisted after Dr. Staples's review. New evidence on weight loss alone, however, could not change Dr. Staples's conclusion on equivalence, because Carlson also must show an impairment as severe as a gastrointestinal disorder. *See Zebley*, 493 U.S. at 531. Therefore, the ALJ did not err by rejecting Carlson's request for updated medical testimony.

For these reasons, the judgment of the district court is affirmed.

_____