# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3515

_____

April Dixon

*Plaintiff - Appellant*

v.

Andrew Saul, Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: September 24, 2019
Filed: January 28, 2020
[Unpublished]

_____

Before SMITH, Chief Judge, BEAM and ERICKSON, Circuit Judges.

_____

PER CURIAM.

April Dixon, who suffers from an intellectual disorder, applied for supplemental security income under the Social Security Act. After a hearing on

June 8, 2016,[1] the administrative law judge (ALJ) concluded that her limitations, although severe, do not rise to the level of a disability. The district court[2] affirmed, and so do we.

The ALJ determined that Dixon is not disabled for two reasons. See 42 U.S.C. § 1382c(a)(3)(A) (defining "disabled," as relevant here, as an inability to work because of a "physical or mental impairment"). First, the ALJ found that Dixon's mild intellectual disorder, while severe, is not enough to qualify as a "listed impairment," specifically Listing 12.05C,[3] which requires a finding of disability when the claimant has a valid IQ score between 60 and 70; experiences significantly subaverage general intellectual functioning before the age of 22; and has a physical or other mental impairment imposing additional significant work-related limitations. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2016); Carlson v. Astrue, 604 F.3d 589, 592 (8th Cir. 2010) ("If the ALJ finds that a claimant has an impairment that meets or equals one of the listings, then the claimant will be found disabled.").

---

[1]This was Dixon's fifth hearing in front of an administrative law judge (ALJ), with the first one occurring in 2009. After each of the five hearings, the ALJ denied benefits. The first four times, that decision was reversed: by the Appeals Council the first two times (to consider psychiatric evidence); by the district court the third time (to consider whether Dixon met Listing 12.05C); and by the Appeals Council again the fourth time (to consider more mental impairment evidence).

[2]The Honorable Patricia S. Harris, United States Magistrate Judge for the Eastern District of Arkansas, to whom this case was referred for final disposition by consent of the parties under 28 U.S.C. § 636(c).

[3]Effective January 17, 2017, the agency revised the listings, and Listing 12.05 no longer contains a part C. Dixon acknowledges in her briefing that the rules in effect at the time of the hearing apply, and we thus apply and analyze the former version of 12.05. Further, nothing in the new listing convinces us that the outcome would be different in any event.

Second, the ALJ found that jobs for someone with Dixon's limitations exist in the national economy.

In reviewing these determinations, we "do not reweigh the evidence presented to the ALJ." Johnson v. Colvin, 788 F.3d 870, 872 (8th Cir. 2015) (quotation omitted). Rather, we will affirm if findings are supported by substantial evidence in the record as a whole, "even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

Dixon focuses her appellate argument on the ALJ's conclusion that Dixon did not establish former Listing 12.05C and so we begin our analysis there. See Cronin v. Saul, 945 F.3d 1062, 1066 n.3 (8th Cir. 2019) (explaining the listings and their relationship to the disability determination). The ALJ found that the evidence did not establish that Dixon had a low enough IQ (for our purposes, between 60 and 70) to fit within the entry point to former Listing 12.05C. Although Dixon's past test scores seem to fit within this standard, the ALJ noted that past results were not completely valid or reliable because there was evidence of her malingering or exaggeration. The district court disagreed with the ALJ's IQ finding, and we understand why–Dixon's valid IQ scores were in the upper 50s and the low 60s; even taking exaggeration and malingering into account, we are not sure substantial evidence supports the ALJ's implicit finding that her IQ was higher than 70. Nonetheless, an IQ of between 60 and 70 is the starting point for the inquiry into former Listing 12.05C,[4] not the end. The ALJ also considered whether Dixon's three stated disabling conditions–obesity, hypothyroidism, and depression–were severe enough to limit her ability to work.

---

[4]As the district court noted "there is no debate" in this matter over the second element of former Listing 12.05C–onset before the age of 22.

The ALJ found that Dixon's obesity did not impose any severe limitations on her daily functional ability. For instance, Dixon testified at the several hearings that she: took care of her children; cooked; visited friends and family; shopped; did laundry; rode a bike; obtained her driver's license; and attended church. With regard to depression, the ALJ found that depressive disorder did not cause more than a minimal limitation in Dixon's ability to perform basic work activities and therefore was non-severe, citing the fact that Dixon had no history of psychotherapy or other treatment with a mental health practitioner. While Dixon does take an anti-depressant prescribed by her primary care physician, the ALJ found that this medicine appeared to adequately control her depression symptoms because the record of her daily activities, listed above, did not appear to be restricted due to depressive disorder symptoms. Finally, with regard to Dixon's thyroid condition, the ALJ found that it was adequately controlled by medication when she is compliant with said medication. The ALJ noted, and the medical evidence supports, that Dixon went entire years without taking her thyroid medication. Further, her primary care physician found that her thyroid condition, if treated properly with medication, was not so severe as to constitute a disability. See, e.g., Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004))). Accordingly, substantial evidence in the record supports the ALJ's finding that Dixon is only moderately limited with regard to her alleged disabling conditions of obesity, depression and hypothyroidism, and, on that basis, the ALJ correctly found that Dixon did not meet former Listing 12.05C.

There is also substantial evidence that jobs exist for Dixon in the national economy. Responding to a hypothetical question from the ALJ, a vocational expert testified that such positions are available in sufficient numbers for those like Dixon who have the ability to perform only unskilled, rote tasks that require direct supervision and little independent judgment. Because of this, Dixon is not disabled within the meaning of the Social Security Act and regulations. Brown, 390 F.3d at

539 (noting that if the claimant can perform work that exists in sufficient numbers in the national economy, she is not disabled).  The judgment is accordingly affirmed.

_____