# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-2134

———————————————

Michael Scott Adair

*Plaintiff - Appellant*

v.

Andrew Saul, Commissioner, Social Security Administration

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: February 12, 2020
Filed: June 4, 2020
[Unpublished]

——————————

Before SMITH, Chief Judge, COLLOTON and STRAS, Circuit Judges.

——————————

PER CURIAM.

An administrative law judge ("ALJ") denied Michael Adair's application for Social Security disability benefits. The district court[1] affirmed, and so do we.

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

Adair applied for benefits after suffering a heart attack. During the application process, his treating physician stated in an interrogatory that Adair's heart disease qualifies as a "listed impairment." *See* 20 C.F.R. pt. 404, subpt. P, app. 1; *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010) ("If the ALJ finds that a claimant has an impairment that meets or equals one of the listings, then the claimant will be found disabled."). An ALJ disagreed based on other medical evidence in the record.

Adair also tried to establish that he is disabled in light of his limitations, even if they do not amount to a listed impairment. *See* 42 U.S.C. § 1382c(a)(3)(A) (defining "disability," as relevant here, as an inability to work because of a "physical or mental impairment"). The ALJ again disagreed, this time because jobs "exist in significant numbers in the national economy" for someone like him. 20 C.F.R. § 404.1560(c).

Adair challenges both conclusions. In reviewing the ALJ's decision, we do not "reweigh the evidence." *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015) (citation omitted). Rather, we will affirm if there is "substantial evidence" in the record as a whole, "even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome" ourselves. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

II.

We start with the listings. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. Adair believes that he satisfies two of them: chronic heart failure, *id.* § 4.02,[2] and ischemic

---

[2]One of Adair's arguments is that he meets the listing for chronic heart failure because he cannot perform "an exercise tolerance test . . . *due to [d]yspnea, fatigue, palpitations, or chest discomfort.*" 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02B.3 (emphasis added). This provision does not apply here because Adair's inability to

heart disease, *id.* § 4.04. To meet either, he had to show that his symptoms "very seriously limit [his] ability to independently initiate, sustain, or complete activities of daily living." *Id.* § 4.02B.1; *see id.* § 4.04C.2.

Substantial evidence supports the ALJ's finding that they do not. We are not writing on a blank slate here, having already upheld an ALJ's no-disability finding in a factually similar case. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364 (8th Cir. 2016). In fact, *Stoner* presented an even closer call. The claimant in that case had more severe health issues than Adair, including an even lower ejection fraction, which measures how well the heart pumps blood to the rest of a person's body. *See id.* at 366.

Differences in the ejection fraction can result in differences in functional capacity. According to the New York Heart Association Functional Classification, which uses a scale of I to IV, the claimant in *Stoner* was in class III ("Marked limitation of physical activity."). *Classes of Heart Failure*, American Heart Association, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure (last reviewed May 31, 2017); *see Stoner*, 818 F.3d at 368, 371–72 (discussing this metric). Adair, by contrast, falls into class I ("No limitation of physical activity") or class II ("Slight limitation of physical activity."). *Classes of Heart Failure*, *supra*. Consistent with this classification, the evidence showed that is able to drive his kids to and from school each day; help them with their homework; play "video games, puzzles, or use[] a computer"; shop for groceries; and coach sports from the sidelines. The claimant in *Stoner* could perform some of these tasks too, which is why we upheld the ALJ's no-listed-impairment finding in that case. *See Stoner*, 818 F.3d at 370.

Based on the medical evidence and *Stoner*, we conclude that substantial evidence supports the ALJ's determination that Adair does not meet either listing.

---

complete one is "due to" the risks posed by his defibrillator, not one of the reasons listed. *See id.*

We acknowledge that there is some contrary evidence in the record, including from his treating physician,[3] but we will not reverse merely because "inconsistent conclusions may be drawn from the evidence." *McNamara*, 590 F.3d at 610.

## III.

Substantial evidence also supports the finding that jobs are available for Adair in the national economy. The ALJ determined that he could perform sedentary work with some limitations. *See Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001) (discussing "residual functioning capacity"). Answering a hypothetical question based on those limitations, a vocational expert testified about the jobs that he could do.

Adair challenges both the hypothetical question and the premise that he could work in a sedentary job. His objections boil down to one overarching point: the ALJ overestimated his abilities by failing to take into account his difficulty reaching and need for extra breaks. *See Pickney v. Chater*, 96 F.3d 294, 296–97 (8th Cir. 1996) (reversing when the ALJ's hypothetical question did not factor in an established limitation). Had the ALJ done so, he argues, the available jobs would have vanished.

---

[3]Adair believes that his treating physician's opinion should have been given "controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also Stoner*, 818 F.3d at 371 (rejecting a similar argument). For two reasons, however, the ALJ had good reason to discount it. First, the opinion is inconsistent with the treating physician's notes, which suggested that Adair's symptoms were milder, and his testimony in another proceeding that Adair fell into either class I or II. *See Davidson v. Astrue*, 578 F.3d 838, 842–43 (8th Cir. 2009) (explaining that inconsistencies can justify discounting the opinion of a treating physician). Second, the opinion did not "identif[y] specific functional limitations," so other evidence in the record was more "instructive" when it came to determining which "activities [Adair] could and could not complete." *Stoner*, 818 F.3d at 371.

Once again, there is enough evidence to support the ALJ's findings. On Adair's ability to reach, for example, substantial medical evidence, including the opinion of an independent cardiologist, supports the no-limitation finding. As for breaks, the medical-opinion evidence suggests that he did not need them. In each case, the ALJ just weighed the evidence differently than Adair would have. It was allowed to do so. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

IV.

We accordingly affirm the judgment.

_____